H. A. LATHAM, Administrator of the Estate of Nonnie Lula Allison, Deceased, Appellant,

v.

O. M. ALLISON, Jr., Executor of the Estate of O. M. Allison, Sr., Deceased, Appellee.

No. 17910.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 8, 1977.

Rehearing Denied Jan. 12, 1978.

Stark, Barnhart & Moore and Richard S. Stark, Gainesville, for appellant.

Jack Connell, Bowie, for appellee.

## OPINION

SPURLOCK, Justice.

This appeal arises out of a suit for an accounting and partition of property between two estates. Finding that the certificates of deposit and bank balances in dispute were the community property of O. M. Allison, Sr., and Nonnie Lula Allison, the trial court ordered that H. A. Latham as administrator of the estate of Nonnie Lula Allison recover from O. M. Allison, Jr., as executor of the estate of O. M. Allison, Sr., the sum of $28,470.59 plus interest at the judgment rate until paid. The personal representative of each estate has perfected an appeal to this court.

We reverse and render judgment for appellant, H. A. Latham, administrator of the estate of Nonnie Lula Allison, for $35,378.62 plus interest at 9% per annum from December 6, 1976, until paid.

O. M. Allison, Sr., and Nonnie Lula Allison were married on April 12, 1953. There were no children born of this marriage. O. M. Allison, Sr. died in March 1970; Nonnie Lula Allison died in October, 1970.

This suit was filed by H. A. Latham, administrator of the estate of Nonnie Lula Allison (appellant), against O. M. Allison, Jr. as executor of the estate of O. M. Allison, Sr. (appellee) and against O. M. Allison, Jr., in his individual capacity and several others who are not involved in this appeal. One of the purposes of the suit was to claim a certain portion of the assets held by the estate of O. M. Allison, Sr. as being the separate property of Nonnie Lula Allison.

O. M. Allison, Jr., as executor of the estate of O. M. Allison, Sr., has perfected an appeal in his representative capacity only,

not in his individual capacity. His sole complaint on appeal is that two certificates of deposit upon the death of Allison, Sr. became the property of O. M. Allison, Jr., by virtue of a joint tenancy, rather than community property, which was divided by the trial court in its judgment as one-half belonging to the estate of O. M. Allison, Sr. and one-half belonging to the estate of Nonnie Lula Allison.

An appeal bond was filed by O. M. Allison, Jr. in his representative capacity as executor of the estate of O. M. Allison, Sr. The estate's sole contention on appeal does not concern the estate, but only Allison, Jr. in his individual capacity. Since Allison, Jr. was a party to the suit below, he could have perfected an appeal in his individual capacity, but he did not do so. It cannot be said that he is taking this appeal on behalf of the estate, because if he were to prevail on his "point of error", the assets of the estate he represents would be diminished, while his own net worth would be increased.

■ Opposing counsel has moved to dismiss the appeal of Allison, Jr. in his representative capacity, since his only complaint involves a matter that should have been appealed in his individual capacity. We overrule this motion; however, we cannot rule on the "point of error" advanced by O. M. Allison, Jr., since he has not perfected an appeal in his individual capacity. Neither can we consider the assigned "point of error" as a crosspoint, since it in no way concerns the estate of O. M. Allison, Sr.

We are also confronted with a motion to dismiss the appeal of H. A. Latham as administrator of the estate of Nonnie Lula Allison, because of failure to file an appeal bond. Movant, O. M. Allison, Jr., as executor of the estate of O. M. Allison, Sr., contends that H. A. Latham has a personal interest in the outcome of the litigation, since he is one of the heirs of Nonnie Lula Allison, so that the filing of an appeal bond by him is jurisdictional.

Tex.Prob.Code Ann. § 29 (1956) provides: "When an appeal is taken by an executor, administrator, or guardian, no bond shall be required, unless such appeal personally concerns him, in which case he must give the bond." ·

Tex.Rev.Civ.Stat.Ann. art. 2276 (1971) provides, in pertinent part:

"Executors, administrators and guardians appointed by the courts of this State shall not be required to give bond on any appeal or writ of error taken by them in their fiduciary capacity."

■ The question we are confronted with is: "Does the fact that H. A. Latham is one of the heirs of the decedent mean that the appeal personally concerns him so as to require the filing of an appeal bond, even though he is appealing in his representative capacity on behalf of the estate?"

The case of *Roberts v. Roberts*, 405 S.W.2d 211 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.), has been cited to us by movant for the proposition that a personal representative of an estate must file an appeal bond, if he is also one of the heirs. We do not agree with this interpretation of the *Roberts* case.

*Roberts* involved a situation where Estelle Miller was appointed the administratrix of her mother's estate. She was one of the beneficiaries of a July, 1962 will. After her appointment, the probate court ordered that a November, 1962 will (which could not be produced) be admitted to probate. Under the November will, Estelle Miller was still a beneficiary, but she would receive a lesser share of her mother's estate. Upon her appeal from the admission of the November will to probate, the Waco court of civil appeals ruled that the attempted appeal personally concerned Estelle Miller so as to require that she file an appeal bond in order to perfect an appeal. Thus, it can be seen that she had a personal interest in having a particular will admitted to probate, since she would receive a larger share of her mother's estate under the earlier will. That situation is quite different from the case at bar, where H. A. Latham is acting within the scope of his responsibilities in an attempt to establish the estate's claims to certain property.

We hold that the mere fact that H. A. Latham is one of the heirs does not mean that the appeal "personally concerns him" within the meaning of the Tex.Prob.Code Ann. § 29 (1956). H. A. Latham is appealing in his representative capacity on behalf of the estate of Nonnie Lula Allison. In such a situation, Tex.Prob.Code Ann. § 29 (1956) and Tex.Rev.Civ.Stat.Ann. art. 2276 (1971) provide that he does not have to give a bond in order to appeal on behalf of the estate. We overrule movant's motion to dismiss the appeal of H. A. Latham as administrator of the estate of Nonnie Lula Allison.

H. A. Latham, the administrator of the estate of Nonnie Lula Allison (hereafter known as "appellant"), has presented sixteen points of error. By his first three points of error, appellant basically contends that the trial court erred in failing to adjudicate all disputed funds to be the separate funds of the estate of Nonnie Lula Allison.

Prior to her marriage, Nonnie Lula Allison owned as her separate property 144 shares of common stock of the Franklin Life Insurance Company. In varying amounts, this stock was sold during the period of 1959 to 1966. During their marriage, Mr. and Mrs. Allison, Sr. maintained a joint checking account at the First National Bank of Nocona, Texas. Appellant contends that the proceeds of the sale of this stock were deposited into this joint bank account. Further, he contends that the proceeds were then invested in savings certificates at several savings and loan associations, but were later deposited in other certificates at other financial institutions. As he is aware, appellant is confronted with a tracing problem.

■ In *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965), our supreme court reaffirmed the basic presumption that all property possessed by a husband and wife upon dissolution of their marriage is community property. Tex.Family Code Ann. § 5.02 (1975) perpetuates this same rule. *Tarver* provides that to discharge the burden imposed by the statute, a spouse (or one claiming through a spouse) must trace and clearly identify the property claimed as separate property; however, when the evidence shows that separate and community property have been so commingled so as to defy segregation and identification, the burden is not discharged and the statutory presumption prevails.

■ At the outset, we note that the burden of tracing is a difficult, but not impossible burden to sustain. Like other legal doctrines, it has evolved in Texas case law. To understand this development of the tracing concept in the Texas case law, see *Rose v. Houston*, 11 Tex. 324 (1854); *Hardee v. Vincent*, 136 Tex. 99, 147 S.W.2d 1072 (1941); *Lindemood v. Evans*, 166 S.W.2d 774 (Tex.Civ.App.—San Antonio 1942, writ ref'd); *Waheed v. Waheed*, 423 S.W.2d 159 (Tex.Civ.App.—Eastland 1967, no writ); *West v. Austin National Bank*, 427 S.W.2d 906 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.); *In Re Marriage of Greer*, 483 S.W.2d 490 (Tex.Civ.App.—Amarillo 1972, no writ); *Tarver, supra.*

We are aware of the supreme court's opinion in *McKinley v. McKinley*, 496 S.W.2d 540 (Tex.1973). While it is the most liberal tracing case that we have seen, it still requires that the property be clearly traced and identified as separate property. In that case, Mr. Royal McKinley had $9500 on deposit in a First Federal Savings & Loan savings account. Because of accrued interest, the account balance had grown to $10,453.81. On January 2, 1968, $10,400 was withdrawn from the savings account and on that same day, it was used to purchase a $10,400 savings certificate in the same financial institution. Thereafter, the certificate remained untouched until Mr. McKinley's death. Accordingly, our supreme court ruled that $9500 could be traced into the $10,400 certificate as constituting the separate property of Mr. McKinley. There was no doubt in that case that the $9500 separate property was actually deposited into the $10,400 certificate, since it was only a transfer on the books of the same financial institution.

We will compare the facts of the case at bar to the *McKinley* case to determine

whether appellant has sustained his burden of tracing to overcome the statutory community property presumption.

As illustrative of appellant's tracing of separate property, we shall examine his attempt to trace $5500. The following statements, in summary form, are taken from appellant's brief:

(1) 72 shares are sold with transfer date of August 25, 1959. Proceeds of this sale were $6027.50.

(2) Of the above proceeds, $5500 was deposited in Oak Cliff Savings & Loan Association on August 24, 1959. The above $5500 remained on deposit there until December 30, 1969 (along with $9500 additional funds) when the whole of the account in the sum of $15,000 was withdrawn.

(3) On the above $15,000, the sum of $14,000 was deposited in a First National Bank of Nocona certificate of deposit where it remained through March 23, 1970, the date of death of O. M. Allison, Sr.

Conclusion: $5500 of the $21,000 certificate of deposit drawn upon First National Bank of Nocona is a portion of the proceeds from the original sale of 72 shares of stock.

Unfortunately, only a few of these statements are supported by the evidence. For example, when the stock was sold for $6027.50, there is no evidence to indicate that the proceeds of that sale constituted the source of the $5500 that went into the Oak Cliff Savings & Loan Association. At best, such a contention is only conjecture. At the time of closing the Oak Cliff account, $15,000 was withdrawn, but again, there is no evidence that this withdrawal was the source of the $14,000 that was deposited into the First National Bank of Nocona.

■ When tracing separate property, it is not enough to show that separate funds *could have been* the source of a subsequent deposit of funds. Such conjecture does not constitute sufficient evidence to sustain appellant's burden of tracing to overcome the community property presumption of the Tex.Family Code Ann. § 5.02 (1975).

■ We have reviewed the other situations whereby appellant has attempted to trace separate property; however, there is a total absence of evidence to show that the various accounts were *actually* funded with the proceeds from the sale of the separate stock. Since appellant has not sustained his burden of tracing, the statutory community property presumption prevails. Appellant's first three points of error are overruled.

By his fourth, seventh, tenth and thirteenth points of error, appellant contends that the trial court erred in its judgment which deducted the following amounts from the funds adjudged to belong to the estate of Nonnie Lula Allison, because there are no pleadings seeking the allowance of such setoffs: (1) one-half of $1063.22 for income taxes paid by the estate of O. M. Allison, Sr., (2) one-half of $5000 "paid on old debts", (3) one-half of $1752.83 paid on Nonnie Lula Allison's expenses, and (4) one-half of $6000 for attorney's fees.

In his pleadings, appellee did not raise the question of any setoffs it might have been due. This should have been done by the filing of a counterclaim. A counterclaim has been defined as:

" '[A] claim, which, if established will defeat or qualify a judgment to which the plaintiff is otherwise entitled. It embraces both setoff and recoupment, and also comprehends reconvention as well as all adversary actions by the defendant in a case.' . . . The fundamental philosophy of all setoffs is that they are offered by a defendant in opposition to some money demand asserted by a plaintiff. . . ." *E. E. Farrow Co. v. United States Nat. Bank of Omaha*, 358 S.W.2d 934, 935 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.).

■ The purpose of trying a counterclaim at the time of trying the main suit is to permit all claims of parties arising out of the same transaction or occurrence to be disposed of in one suit and thereby avoid a multiplicity of suits. *Carter v. Walton*, 469 S.W.2d 462, 467 (Tex.Civ.App.—Corpus Christi 1971, no writ).

Tex.R.Civ.P. 97(a) (1977), concerning compulsory counterclaims, provides:

"A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; . . . ."

We hold that any claims that the estate of O. M. Allison, Sr. had against the estate of Nonnie Lula Allison constituted compulsory counterclaims. Having failed to file any counterclaim, appellee had waived any rights to have the disputed setoffs awarded by the trial court. We sustain appellant's fourth, seventh, tenth and thirteenth points of error. We hold that it was error for the trial court to allow the disputed setoffs in this case, since such claimed setoffs should have been raised by way of a counterclaim. Since we have held that the setoffs were not raised by the pleadings, we conclude that it is unnecessary to discuss appellant's "no evidence" and "insufficient evidence" points on the issue of the propriety of the disputed setoffs.

At the time of the trial, there was on deposit a total of $72,078.24, which represents the community property of the parties and accrued interest. One-half of this amount, or $36,039.12, belonged to the estate of Nonnie Lula Allison, less one-half of $1321.01 (which is $660.50) previously paid to Nonnie as a widow's allowance, of which appellant makes no complaint on appeal. The judgment that the trial court should have rendered for the estate of Nonnie Lula Allison is for $35,378.62.

We reverse the judgment of the trial court and render the judgment that the trial court should have rendered, which is for $35,378.62 to be paid to the estate of Nonnie Lula Allison, plus interest at the rate of 9% per annum from December 6, 1976, until paid.

Costs of this appeal are taxed against appellee.