In the Matter of the ESTATE OF
Robert C. HANAU, Deceased,
Petitioner,

v.

Dorris Dunn HANAU, Respondent.

No. C–6133.

Supreme Court of Texas.

May 20, 1987.

Rehearing Denied June 24, 1987.

Richard D. Davis, Sr., Johnson & Davis, Harlingen, and Michael J. Cenatiempo and Sharon E. Gardner, Michael J. Cenatiempo & Associates, P.C., Houston, for petitioner.

Randell W. Friebele, Friebele & Mardis, Harlingen, for respondent.

ROBERTSON, Justice.

This case involves the question of whether the rule announced in *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982) applies to probate as well as divorce matters.

Robert and Dorris Hanau were married in Illinois in 1974 and five years later moved to Texas. After moving here, Robert prepared a will leaving his separate property to his children by a prior marriage, and his community property to Dorris. Robert and Dorris each had substantial amounts of separate property before the marriage, and at all times kept such property under their own names. While married and in Illinois, Robert accumulated numerous shares of stock through the use of his separate property. Under Illinois common law, this would have remained his separate property. Robert died in Texas in 1982 and Dorris was granted letters testamentary on May 10, 1982. In February 1983, Dorris transferred large amounts of the estate's stock to the son, Steven, and the daughter, Leslie Ann. In May 1983, however, Steven brought an original petition seeking to have Dorris removed as exectutrix, claiming that she was intentionally mismanaging and embezzling from the estate. Dorris soon thereafter filed an in-

ventory and appraisal listing all of the property owned by Robert, claiming that all stocks obtained by Robert during their marriage were community property, even though they were originally acquired in a common law state. Thus, Dorris sought the return of some of the stock she had already delivered to the children. The parties stipulated that the stocks acquired before marriage were Robert's separate property and that stocks acquired while married in Texas were community property. The only question presented to the trial court was the status of those stocks bought during the marriage in Illinois using Robert's separate property.

The trial court severed the question of proper distribution of the assets and granted a partial summary judgment to Dorris on the characterization issue. The trial judge ruled that all the amounts that accrued during the marriage would be considered as community property in Texas, despite their characterization as separate property outside the state. He concluded that "the Texas Supreme Court in *Cameron v. Cameron* could not have intended to limit its new characterization of common law marital property to divorce proceedings, but rather intended that said characterization to be applied to any situation where the issue arose, including probate proceedings."

The court of appeals affirmed in part and reversed in part. 721 S.W.2d 515. The court determined that *Cameron* was not applicable to probate situations, rather it should be limited only to divorce matters. Therefore, the court held that most of the stocks should have been classified as separate property, and rendered judgment that they go to the son and daughter. The court did, however, affirm as to one specific stock (TransWorld) where it held that a proper tracing could not be shown so as to classify it as separate property. Both parties appeal here; Dorris as to the former holding, Steven as to the latter. We affirm in part and reverse and render in part.

In her application, Dorris relies exclusively on § 3.63 of the Family Code and *Cameron v. Cameron,* 641 S.W.2d 210

(Tex.1982). Dorris admits that *Cameron* dealt with divorce rather than probate, but argues that this court intended to make "a fundamental change in its characterization of common law marital property." She argues that a broad interpretation of the result in *Cameron* should be applied because no distinction can be made between dissolution of the marriage by death or divorce. We disagree.

The long-standing general rule is that property which is separate property in the state of the matrimonial domicile at the time of its acquisition will not be treated for probate purposes as though acquired in Texas. *Oliver v. Robertson,* 41 Tex. 422, 425 (1874); *McClain v. Holder,* 279 S.W.2d 105, 107 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.). In *Cameron,* we held, however, that separate property acquired in common law jurisdictions merits different treatment in the limited context of divorce or annulment. While there were solid reasons for creating the *Cameron* rule in those situations, the same rationales are not applicable to probate procedures.

In *Cameron,* this court used three bases for its holding. First, the court examined the laws of some of the other community property states, and agreed that a difference exists between common law marital property and the separate property of community property jurisdictions. This court cited to several cases, including *Rau v. Rau,* 6 Ariz.App. 362, 432 P.2d 910 (Ct.App. 1967), in support of its holding. In examining *Rau,* however, it is clear that the court there refused to apply the rule to probate cases because "the statutory regulation of rights of succession has been regarded as something apart from the determination of property rights between living persons." *Id.,* at 914. Furthermore, nothing in the other cases used for support in *Cameron* reveals an intent to extend the rule to probate cases in those jurisdictions. *See Hughes v. Hughes,* 91 N.M. 339, 573 P.2d 1194 (1978); *Berle v. Berle,* 97 Idaho 452, 546 P.2d 407 (1976). In fact, it appears that the only community property states which have extended the rule reach such a result based completely upon statutory authority. *See* California Prob.Code

§ 66 (West 1985); Idaho Code § 15–2–201 (1971). Thus, there is no case law or trend which supports change of the rule here.

The second basis used in *Cameron* was the Texas legislature's action in adopting § 3.63 of the Family Code. Section 3.63 provides that a trial judge shall make a "just and right" division of property, which may include: "Property that was acquired by either spouse while domiciled elsewhere and that would have been community property if the spouse who acquired the property had been domiciled in the state at the time of the acquisition." Therefore, this court merely judicially adopted § 3.63 into the substantive law of this State. Dorris suggests that we apply § 3.63 to the probate situation, but by its own terms the Family Code provision applies only "in a decree of divorce or annulment." In addition, there is no provision similar to § 3.63 in the Probate Code, nor in any other statute of this state, which would logically require us to follow her suggestion. Therefore, there is also a lack of statutory authority which mitigates against extending *Cameron.*

■ The final foundation in *Cameron* dealt with the necessity of giving the trial court the power to effect an equitable distribution of property. Without such power, unfair results could occur because one spouse's equitable share of the other spouse's separate property under common law might not be considered under our community property definition of separate property. The *Cameron* holding merely made such an interest in common law separate property one which is susceptible to a Texas trial court's equitable division. The key is that there is no similar right in a probate proceeding, nor is there any need for any. If there is a valid will, the will should usually be enforced regardless of the equity of the devises or bequests within. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 889 (1960) (while a court can relax rules of construction, it may not redraft a will). Similarly, if the property is to pass through intestacy, a specified statutory formula is invoked which operates without the need to make equitable determinations. *See* TEX.PROB.CODE ANN. § 38 (Vernon 1980).

■ In sum, to extend *Cameron* would make a shambles of 150 years of Texas probate law, thus, without a clear showing of supporting case law, statutory authority or a clear need for such broad power in the trial court, we refuse to do so. Because the court of appeals refused to enlarge *Cameron,* its judgment on this point is affirmed.

In turning to the only other issue in this case, we must address whether the court of appeals erred in holding that the 200 shares of TransWorld stock were not properly traced.

The stipulations of the parties provided the following:

(1) Both parties owned considerable amounts of property before entering the marriage.

(2) After the marriage, both Robert and Dorris continued to keep their respective stock, bond and mutual funds accounts in their own names.

(3) During all times pertinent to this lawsuit, all transactions in Robert's account were from his income, and all transactions in Dorris' account were from her income.

(4) That the following transactions took place in the stock brokerage account of Robert:

A) On the date of marriage, there were 200 shares of Texaco stock in the account.

B) That while married and living in Illinois, the Texaco stock was sold for $5,755.00 and on the same date 200 shares of City Investing stock were purchased for $5,634.00.

C) After moving to Texas, the City Investing stock was sold for $6,021.00 and on the same date 200 shares of TransWorld stock were bought for $6,170.00.

The court of appeals held that the above stipulations did not constitute sufficient evidence to overcome the community property presumption. The court held that it is not sufficient "to show that the separate

funds *could have been* the source of a subsequent deposit of funds," citing *Lantham v. Allison*, 560 S.W.2d 481, 485 (Tex. Civ.App.—Fort Worth 1978, writ ref'd n.r.e.) (emphasis in original).

■ In *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965), this court held that all property possessed at the time of dissolution of the marriage is presumed to be community property. To show otherwise, the spouse must trace and clearly identify the property claimed as separate property. While the burden is difficult, it is not an impossible one to bear. *Lantham*, at 484. But if the evidence shows that the separate property and community property are commingled so as to defy segregation and identification, the burden is not discharged and the statutory presumption prevails. *Lantham*, at 484.

■ The account here has not been commingled, as it was stipulated that the decedent had always kept the property in his own name and that his wife had no power over the account. It certainly does not appear that the property has so radically changed as to "defy resegregation and identification" as said by this court in *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973). Further, the petitioner has shown the chain of events leading from the Texaco stock to the TransWorld purchase and shown that no other transactions occurred on the days in question, which would have planted the seeds of doubt upon the possible source of the funds used to buy the stocks. Because the court of appeals' holding that the TransWorld stock was not properly traced was erroneous, we reverse the judgment of the court of appeals and render judgment that the TransWorld stock be transferred to Steven Hanau. The judgment is in all other things affirmed.

SPEARS, J., filed a concurring opinion.

SPEARS, Justice, concurring.

I concur in the result reached by the court. *Cameron v. Cameron*, 641 S.W.2d 210, 221–23 (Tex.1982) was based in large part upon Section 3.63 of the Family Code which provided statutory authorization for the characterization of property acquired outside of Texas as quasi-community property. No such provision is present in the Probate Code; therefore, I concur.

The court's opinion creates two rules for the characterization of the same property. A husband and wife from a common law state could retire to Texas with the majority of their property characterized as the husband's separate marital property. If the wife brought divorce proceedings, the "separate" marital property would be characterized as quasi-community property under *Cameron* and Section 3.63 of the Family Code. The trial court would then be authorized to divide the marital property between the spouses in a manner that it deemed just and right. Under the majority's decision in this case, the same husband could execute a will devising all the "separate" marital property to a third party leaving the wife without any means of support after he dies.

Most jurisdictions have some method to protect the interest and insure the support of surviving spouses. This court's holding leaves surviving spouses without the protection afforded by either common law or community property statutory schemes in certain situations. Accordingly, I urge the Legislature to eliminate this illogical and potentially inequitable difference in the characterization of marital property by adopting a Probate Code section similar to Section 3.63 of the Family Code and the probate codes of other jurisdictions. *See* California Prob.Code § 66 (West 1985); Idaho Code § 15–2–201 (1971).