COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-026-CV

  
LINDA 
S. BOYD                                                                     APPELLANT
 
V.
 
DAVID 
A. BOYD                                                                       APPELLEE

  
------------
 
FROM 
COUNTY COURT AT LAW OF PARKER COUNTY
 
------------
 
OPINION
 
------------
I. 
Introduction
        The 
primary issue we address in this appeal is whether uncontroverted testimony by a 
spouse that he used separate property to benefit the community estate 
constitutes clear and convincing evidence rebutting the community property 
presumption and supporting a claim for economic contribution. We hold that, 
based on the entire record in this case, the evidence presented is not such that 
the fact-finder could reasonably have formed a firm belief or conviction about 
the truth of the allegations sought to be established sufficient to overcome the 
community property presumption. Accordingly, although we affirm the parties’ 
divorce, we sustain Appellant Linda Boyd’s first and second issues, reverse 
the portion of the trial court’s judgment dividing the parties’ property, 
and remand this cause to the trial court for a just and right division of the 
community property.
II. 
Factual and Procedural Background
        David 
and Linda Boyd were married on February 14, 1989. Thirteen years later, after a 
period of separation, Linda filed for divorce alleging irreconcilable 
differences between the parties.[1]  Thereafter, 
the trial court entered temporary orders granting Linda possession of the 
community residence during the pendency of the divorce, ordering David to pay 
Linda $2,000 per month to account for spousal maintenance and to pay the monthly 
mortgage on the community residence, and instructing the parties to divide the 
proceeds of a joint money market account.
        On 
July 19, 2002, the trial court notified the parties’ attorneys of record that 
the final hearing was set for October 28, 2002. Less than one month later, 
Linda’s attorney filed a motion to withdraw[2]  
because Linda had repeatedly failed to contact him as requested. Although the 
motion did not contain any reference to the date of the final hearing, the cover 
letter accompanying the motion clearly indicated the date. Copies of the motion 
and the letter were sent to Linda’s residence. The trial court subsequently 
granted the motion to withdraw.
        On 
October 28, 2002, David’s attorney telephoned Linda to notify her that she 
would need to appear in court the following day. On October 29, 2002, the court 
called the case to trial and both parties announced ready. Thereafter, Linda 
informed the court that she was proceeding pro se and agreed to allow David to 
proceed first on his counter-petition for divorce.
        During 
David’s case-in-chief, he introduced seven exhibits into evidence without any 
objection from Linda. The exhibits essentially provided summaries regarding the 
nature and classification of the property in dispute, including a list of assets 
that David claimed were Linda’s separate property, a list of assets that David 
claimed were his separate property, a list of assets that David requested the 
court award to Linda, David’s First Amended Inventory and Appraisement that 
identified the parties’ assets and listed David’s claims regarding the 
character and value of each asset, a list of assets that David requested the 
court award to him, a summary of the proposed division of the parties’ 
community property, and a summary of David’s claim for economic contribution. 
David then briefly testified regarding the nature of various property contained 
on each list, classifying the property pursuant to his exhibits and requesting 
that the trial court divide the community estate accordingly. However, during 
his case, David presented no other documentary evidence or testimony to 
substantiate his classification of the items in the community estate.
        After 
David presented his case, the court inquired as to whether Linda had any 
questions for David. Although she indicated that she did have questions for 
David, she responded that she was going to forego them. During Linda’s 
case-in-chief, she attempted to present evidence regarding an appraisal of the 
community residence, but David objected because Linda had failed to respond to 
any of his discovery requests. Thereafter, the trial court sustained David’s 
objection, and Linda rested her case. At the close of the hearing, the trial 
court granted the parties’ divorce and divided the community estate in 
accordance with David’s exhibits. No findings of fact or conclusions of law 
were requested or filed.
        On 
October 31, 2002, two days after the trial court signed the final decree of 
divorce, Linda retained counsel and filed a motion for new trial. In her motion, 
Linda alleged that at the time of the trial, she was unaware that the hearing 
was a final trial setting and that she did not have the mental capacity to 
conduct herself competently because she was under the influence of psychiatric 
drugs. She also complained that the trial court improperly excluded evidence and 
she challenged the evidence to support the trial court’s division of the 
parties’ estate. On January 9, 2003, after a hearing on the motion, the trial 
court denied Linda’s request for a new trial.
        Linda 
perfected this appeal from the trial court’s final decree of divorce 
dissolving her marriage to David and dividing the community estate. In five 
issues, Linda contends that the trial court erred by granting David’s claim 
for economic contribution, by considering David’s claim for economic 
contribution as a factor in valuing the community estate, by mischaracterizing 
certain marital assets, by improperly dividing the community estate, and by 
denying her motion for new trial.
III. 
Economic Contribution
        In 
her first two issues, Linda contends that the trial court erred by granting 
David’s claim for economic contribution and by considering David’s claim for 
economic contribution as a factor in valuing the community estate. Specifically, 
Linda contends that the trial court abused its discretion with regard to 
David’s claim for economic contribution because David failed to rebut by clear 
and convincing evidence the presumption that the property he utilized to make an 
economic contribution to the community estate was community property. Thus, she 
complains that the evidence is legally and factually insufficient to support 
David’s claim for economic contribution. David maintains, however, that the 
evidence is sufficient to support the trial court’s implied finding that he 
overcame the community property presumption by clear and convincing evidence. 
Consequently, he contends that the trial court properly granted his claim for 
economic contribution because the evidence established the separate character of 
the funds used to support his claim.
        A. Standard of Review
        A 
trial court is charged with dividing the community estate in a "just and 
right" manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001 (Vernon 1998); Zeptner 
v. Zeptner, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. 
on reh’g). Trial courts are afforded wide discretion in dividing marital 
property upon divorce; therefore, a trial court’s property division may not be 
disturbed on appeal unless the complaining party demonstrates from evidence in 
the record that the division was so unjust and unfair as to constitute an abuse 
of discretion. Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); McClary 
v. Thompson, 65 S.W.3d 829, 833 (Tex. App.—Fort Worth 2002, pet. denied). 
To determine whether a trial court abused its discretion, we must decide whether 
the trial court acted without reference to any guiding rules or principles; in 
other words, whether the act was arbitrary or unreasonable. See Downer v. 
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. 
denied, 476 U.S. 1159 (1986); McClary, 65 S.W.3d at 833. We must 
indulge every reasonable presumption in favor of the trial court's proper 
exercise of its discretion in dividing marital property. Pletcher v. Goetz, 
9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). 
Accordingly, we will reverse the cause only if the record demonstrates that the 
trial court clearly abused its discretion, and the error materially affected the 
just and right division of the community estate. Jacobs, 687 S.W.2d at 
732-33.
        In 
a non-jury trial, when no findings of fact or conclusions of law are filed or 
requested, we must presume that the trial court made all the necessary findings 
to support its judgment. Pharo v. Chambers County, 922 S.W.2d 945, 948 
(Tex. 1996); Byrnes v. Byrnes, 19 S.W.3d 556, 561 (Tex. App.—Fort Worth 
2000, no pet.). Consequently, if the trial court’s implied findings are 
supported by the evidence, we must uphold its judgment on any theory of law 
applicable to the case. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 
1990).
        When 
a reporter’s record is brought forward on appeal, the trial court’s implied 
findings may be challenged for legal and factual sufficiency the same as jury 
findings or a trial court's findings of fact. Roberson v. Robinson, 768 
S.W.2d 280, 281 (Tex. 1989). However, in family law cases, the abuse of 
discretion standard of review overlaps with the traditional sufficiency standard 
of review; thus, legal and factual insufficiency are not independent reversible 
grounds of error but are relevant factors in assessing whether the trial court 
abused its discretion. Zeptner, 111 S.W.3d at 734 (citing Beaumont 
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991)). Accordingly, to 
determine whether there has been an abuse of discretion because the evidence is 
legally or factually insufficient to support the trial court's decision, we 
engage in a two-pronged inquiry: (1) did the trial court have sufficient 
evidence upon which to exercise its discretion, and (2) did the trial court err 
in its application of that discretion? In re T.D.C., 91 S.W.3d 865, 872 
(Tex. App.—Fort Worth 2002, pet. denied) (op. on reh’g); Evans v. Evans, 
14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Lindsey 
v. Lindsey, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). The 
applicable sufficiency review comes into play with regard to the first question. 
T.D.C., 91 S.W.3d at 872. We then proceed to determine whether, based on 
the elicited evidence, the trial court made a reasonable decision. Id. 
Stated inversely, we must conclude that the trial court's decision was neither 
arbitrary nor unreasonable. Lindsey, 965 S.W.2d at 592.
        When 
the burden of proof at trial is by clear and convincing evidence, we apply a 
higher standard of legal and factual sufficiency review. In re J.F.C., 96 
S.W.3d 256, 265-66 (Tex. 2002); In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). 
Clear and convincing evidence is defined as that “measure or degree of proof 
which will produce in the mind of the trier of fact a firm belief or conviction 
as to the truth of the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007 (Vernon 2002); Transp. 
Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex. 1994). This intermediate 
standard falls between the preponderance standard of civil proceedings and the 
reasonable doubt standard of criminal proceedings. In re G.M., 596 S.W.2d 
846, 847 (Tex. 1980); State v. Addington, 588 S.W.2d 569, 570 (Tex. 
1979); In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. 
denied) (op. on reh’g). While the proof must weigh heavier than merely the 
greater weight of the credible evidence, there is no requirement that the 
evidence be unequivocal or undisputed. Addington, 588 S.W.2d at 570. 
Therefore, in reviewing the evidence for factual sufficiency, we must give due 
consideration to evidence that the fact finder could reasonably have found to be 
clear and convincing and then determine whether, based on the entire record, a 
fact finder could reasonably form a firm conviction or belief that the 
allegations in the petition were proven. C.H., 89 S.W.3d at 25.
        B. Community Property Presumption
        Under 
Texas law, property possessed by either spouse during or on dissolution of the 
marriage is presumed to be community property, absent clear and convincing 
evidence to the contrary. Tex. Fam. Code Ann. § 3.003 (Vernon 1998).[3]  The characterization of property as either community 
or separate is determined by the inception of title to the property. Smith v. 
Smith, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, 
no pet.) (op. on reh’g). Inception of title occurs when a party first has a 
right of claim to the property by virtue of which title is finally vested. Id. 
The major consideration in determining the characterization of property as 
community or separate is the intention of spouses shown by the circumstances 
surrounding the inception of title. Scott v. Estate of Scott, 973 S.W.2d 
694, 695 (Tex. App.—El Paso 1998, no pet.).
        In 
order to overcome the community presumption, the burden is on the spouse 
claiming certain property as separate to trace and clearly identify the property 
claimed to be separate. See Estate of Hanau v. Hanau, 730 S.W.2d 663, 667 
(Tex. 1987) (citing Tarver v. Tarver, 394 S.W.2d 780, 783 (Tex. 1965)). 
The burden of tracing is a difficult, but not impossible, burden to sustain. Latham 
v. Allison, 560 S.W.2d 481, 484 (Tex. Civ. App.—Fort Worth 1977, writ 
ref'd n.r.e.). Tracing involves establishing the separate origin of the property 
through evidence showing the time and means by which the spouse originally 
obtained possession of the property. Ganesan v. Vallabhaneni, 96 S.W.3d 
345, 354 (Tex. App.—Austin 2002, pet. denied).
        The 
issue of whether the property is separate or community property is determined by 
the facts that, according to rules of law, give character to the property. Robles 
v. Robles, 965 S.W.2d 605, 615 (Tex. App.—Houston [1st Dist.] 
1998, pet. denied) (op. on reh’g). Separate property will retain its character 
through a series of exchanges so long as the party asserting separate ownership 
can overcome the presumption of community property by tracing the assets on hand 
during the marriage back to property that, because of its time and manner of 
acquisition, is separate in character. Cockerham v. Cockerham, 527 S.W.2d 
162, 168 (Tex. 1975). However, if the evidence shows that separate and community 
property have been so commingled as to defy resegregation and identification, 
the community presumption prevails. Hanau, 730 S.W.2d at 667.
        When 
tracing separate property, it is not enough to show that separate funds could 
have been the source of a subsequent deposit of funds. Latham, 560 S.W.2d 
at 485. Moreover, as a general rule, mere testimony that property was purchased 
with separate funds, without any tracing of the funds, is insufficient to rebut 
the community presumption. Zagorski v. Zagorski, 116 S.W.3d 309, 316 
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh’g); 
Bahr v. Kohr, 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no 
pet.); McElwee v. McElwee, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st 
Dist.] 1995, writ denied). Any doubt as to the character of property should be 
resolved in favor of the community estate. Akin v. Akin, 649 S.W.2d 700, 
703 (Tex. App.— Fort Worth 1983, writ ref'd n.r.e.).
        C. Error Analysis
        When 
separate property is used to enhance the value of the community estate, 
including the reduction of community debt, the spouse whose separate property 
was used has an equitable right of reimbursement. In re Marriage of Royal, 
107 S.W.3d 846, 850 (Tex. App.—Amarillo 2003, no pet.) (citing Tex. Fam. Code Ann. § 3.403 (Vernon 
Supp. 2004)). Accordingly, the Texas Family Code provides that “[a] marital 
estate that makes an economic contribution to property owned by another marital 
estate has a claim for economic contribution with respect to the benefitted 
estate.” Tex. Fam. Code Ann. § 
3.403(a).
        When 
a separate estate is the claimant, the spouse seeking economic contribution has 
the burden to prove, by clear and convincing evidence, that the funds expended 
to reduce the community debt were separate funds. Id. § 3.003(b). 
Moreover, a spouse seeking economic contribution must bring forth sufficient 
evidence for the factfinder to determine the enhancement value to the benefitted 
estate. See Langston v. Langston, 82 S.W.3d 686, 689 (Tex. 
App.—Eastland 2002, no pet.). According to the family code, the amount of a 
claim for economic contribution is derived by multiplying the equity in the 
benefitted property on the date of the divorce by a fraction. Tex Fam. Code Ann. § 3.403(b). The 
fraction's numerator is the amount of the economic contribution by the 
contributing estate and its denominator is equal to the sum of that same 
economic contribution, the equity in the benefitted property on the date of the 
marriage, and any economic contribution to the benefitted property by the 
benefitted estate during the marriage. Id.
        At 
the final hearing, David presented a claim for economic contribution pursuant to 
Subchapter E of the Texas Family Code. Id. §§ 3.401-.410. David 
testified that after he and Linda were married, they obtained a mortgage of 
approximately $350,000 in order to build a residence in Parker County.[4]  David then testified that, based upon the advice of 
his accountant, he made an economic contribution to the community estate by 
paying down the mortgage on the Parker County residence using $200,000 he had 
collected from the sale of separate assets—a number of cars and a Colleyville 
residence—awarded to him as part of a prior divorce settlement. He explained 
that he had sold the cars in order to pay off the remainder of the mortgage on 
the Colleyville residence. He then maintained that he sold the Colleyville 
residence and used the proceeds from that sale to reduce the mortgage on the 
Parker County residence.
        David 
testified that, according to a recent appraisal, the Parker County residence was 
worth $450,000 at the time of trial. He also explained that the principal amount 
of debt on the day of divorce was $135,000, and therefore, he maintained that 
the actual net equity in the home was $315,000. He then explained that the total 
principal paid on the house as of the date of trial was $215,000, consisting of 
$200,000 from David’s separate estate and $15,000 from the community estate. 
Based on the proportion of payments made by David’s separate estate and the 
community estate, David estimated that his separate estate contributed 
$294,456.52 of the net equity in the residence, leaving the community equity in 
the residence at $20,543.48. Thereafter, David requested that the trial court 
grant his claim for economic contribution in the amount of $294,456.52 and award 
the residence to him along with the $20,543.48 that he maintained was the 
community equity in the residence.
        Linda 
contends that David’s uncorroborated testimony is legally and factually 
insufficient to rebut the community property presumption by clear and convincing 
evidence and to prove the separate character of the property establishing 
David’s claim for economic contribution. David maintains, however, that based 
on this court’s decision in Newland v. Newland, the uncorroborated 
testimony of a spouse, when not contradicted, is sufficient to prove by clear 
and convincing evidence that the property at issue is that spouse’s separate 
property. 529 S.W.2d 105, 107-08 (Tex. Civ. App.—Fort Worth 1975, writ 
dism’d).
        In 
Newland, this court was called upon to determine whether a husband had 
presented clear and convincing evidence to establish that four parcels of land 
were purchased with separate funds, thereby establishing the separate character 
of the land. Id. at 107-09. During the couple’s marriage, the husband 
held two accounts in the same bank—one for the deposit of community funds and 
one for business transactions relative to the property constituting his separate 
estate and exchanges thereof. Id. at 108. However, when funds in one 
account were low, the husband would use funds from the other account as a 
short-term loan. Id. at 109. According to the husband, after each loan, 
“there was repayment so that the two accounts were restored to the condition 
which would have obtained had there not been necessity for any transfer.” Id.
        The 
wife insisted that the husband failed to present sufficient evidence to 
establish the land’s separate character because funds had been so commingled 
between his separate account and the community account as to defy resegregation, 
especially in light of the various exchanges in the form of the property at 
issue over the years. Id. at 107-08. The wife also contended that, 
because of minor gaps in tracing and corroboration, the husband could not 
provide clear and convincing evidence of the land’s separate character. Id.
        After 
reviewing the evidence, the court found that upon the rare instances of 
commingling the husband had demonstrated the ability to compute the balances of 
the separate and community accounts for purposes of resegregation. Id. at 
109. Moreover, the court recognized that, for most of the twenty-year period 
involved, the husband’s “testimony was corroborated by bank records” and 
“documentary evidence.” Id. at 107, 109. Consequently, the Newland 
court found that even with the minor gaps in tracing and corroboration the 
husband had presented clear and convincing evidence to establish the separate 
character of the account, and in turn, the separate character of the land in 
dispute. Id. at 108-09. Accordingly, because the Newland court was 
presented with bank records and documentary evidence corroborating the majority 
of the husband’s testimony, it does not support the proposition that 
uncorroborated, uncontradicted testimony of a spouse is per se sufficient to 
clearly and convincingly prove the separate character of property.
        David 
also cites this court’s decision in Faram v. Gervitz-Faram to support 
his contention that a spouse’s uncorroborated, uncontroverted testimony 
constitutes clear and convincing evidence rebutting the community property 
presumption. 895 S.W.2d 839, 843 (Tex. App.—Fort Worth 1995, no writ). In Faram, 
although the records tracing and identifying the property at issue were 
incomplete, sufficient documentary evidence existed to corroborate the 
spouse’s testimony that the disputed property was separate property. Id. 
at 843-44.
        In 
the instant case, David, as the party claiming that his separate estate was 
entitled to economic contribution, had the initial burden to clearly trace and 
identify the separate nature of funds expended to reduce the community debt. See 
Hanau, 730 S.W.2d at 667; Ganesan, 96 S.W.3d at 354; see also 33 
Judge Don Koons, Texas Practice Series: 
Handbook of Texas Family Law § 9.10 (2004 ed.). During his testimony, 
David presented no documentary evidence to establish the separate origin of the 
funds that he utilized to pay down the Parker County mortgage. Specifically, he 
did not produce financial records, deed or title records, closing statements, or 
other evidence to trace and identify the funds creating his claim for 
contribution from the community estate back to assets that were separate in 
character. For example, there is no documentary evidence in the record 
demonstrating the exact dates of sale or the proceeds received from either the 
sale of the cars or the Colleyville residence that David claimed were separate 
in character. Moreover, while David believed that the Colleyville residence sold 
for approximately $260,000 and that he used $200,000 of the proceeds of such to 
pay down the Parker County mortgage, no documentary evidence exits in the record 
showing that the Parker County mortgage was actually funded with the proceeds of 
sale from the Colleyville residence.
        David 
did not provide supporting documentation to prove the fair market value, 
principal amount of debt, or equity of the Parker County residence as of the 
date of marriage or divorce. See Tex. 
Fam. Code Ann. §§ 3.401(2), 3.403(b). For instance, although he 
testified that the Parker County residence was valued at $350,000 as of the date 
of closing, no mortgage documents, closing statements, or appraisal reports are 
in the record before us. David indicated that an appraiser had valued the Parker 
County residence at $450,000 as of the date of the divorce, but no appraisal 
report substantiating his valuation was introduced into evidence.
        David 
provided no testimony, other than his own, to corroborate or substantiate the 
transactional trail leading up to his claim for economic contribution.[5]  In essence, the only evidence that David provided 
was his own testimony, claiming that he had owned a Colleyville residence and 
some cars prior to his marriage to Linda, out of which he had used proceeds 
generated by the sale of such property to pay $200,000 on the mortgage for the 
Parker County residence, and an “economic contribution summary” exhibit 
stating these same facts.
        At 
trial, David testified that he was unable to access the closing papers on the 
sale of the Colleyville residence because they were in Linda’s possession at 
the Parker County residence.[6]  However, he did 
not address the absence of other supporting documentation establishing the 
separate nature of the cars and the Colleyville residence and, in turn, the 
funds used to support his claim for economic contribution.
        David’s 
testimony about the property he sold to make an economic contribution to the 
Parker County residence and the economic contribution summary admitted into 
evidence are similar to the type of evidence other courts have found 
insufficient to constitute clear and convincing evidence rebutting the community 
presumption and establishing characterization of property as separate. See 
Ganesan, 96 S.W.2d at 354 (holding husband’s testimony failed to 
establish certain accounts were separate property because neither his testimony 
nor the exhibits offered “provid[ed] account numbers, statements of accounts, 
dates of transfers, amounts transferred in or out, sources of funds or any 
semblance of asset tracing”); Osorno v. Orsono, 76 S.W.3d 509, 512 
(Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding husband’s 
testimony insufficient to overcome the community presumption in the absence of 
deposit slips or bank records tracing the source of the funds); Bahr, 980 
S.W.2d at 728-29 (holding wife’s testimony failed to establish property was 
her separate property because documentary evidence offered to support claim that 
property was purchased with monies from a separate property account did not show 
date the account was opened, the running balance of the account, or identify the 
party receiving wire transfer for alleged purchase of property at issue); Robles, 
965 S.W.2d at 616 (holding husband’s testimony insufficient to overcome the 
community presumption when husband only testified as to the separate nature of 
the property in dispute but provided no supporting documentary evidence to trace 
the funds used to purchase the property); McElwee, 911 S.W.2d at 188 
(reversing trial court’s characterization of certain assets as husband’s 
separate property). In fact, Judge Koons, in the “Burden to Prove Separate 
Property” section of his family law treatise presents a scenario very similar 
to the facts here:
  
Example: 
Mary testifies that she owned a car before marriage and that, after the 
marriage, she sold the car and purchased another car she now drives. She asks 
the judge to award her present car to her as separate property since property 
acquired with separate property is separate property. This testimony requires 
the court to infer that she used the money from the sale of her separate 
property car to purchase her present car. It is doubtful the court would find 
this to be clear and convincing evidence. It is likely Mary would need to show 
deposit slips and checks to show clearly the source of funds used to purchase 
the second car, in order to prevail.

  
33 
Judge Don Koons, Texas Practice Series: 
Handbook of Texas Family Law § 9.10.
        David 
did not present specific tracing testimony or corroborating testimony or 
evidence, similar to evidence presented in cases where courts have determined 
that the separate nature of the property was established by clear and convincing 
evidence. Cf. Zagorski, 116 S.W.3d at 316-17 (holding husband did 
establish that funds in foreign bank account were his separate property through 
the inception of title rule by calling three witnesses who testified the account 
existed before husband’s marriage and identified source of funds in account 
and by producing corroborating documentary evidence concerning the account); Faram, 
895 S.W.2d at 843 (holding wife did establish that two investment accounts and 
Treasury bill were her separate property through documents “trac[ing] the 
source of funds used to purchase the Treasury bill back to a USAA savings 
account designated in the couple's pre-marital property agreement as Gervitz' 
separate property” and trac[ing] the two investment accounts “to a 
pre-marriage point in time”); Newland, 529 S.W.2d at 107-09 (holding 
husband did establish that funds in account were his separate property because 
for most of the twenty-year period involved, the husband’s “testimony was 
corroborated by bank records” and “documentary evidence”). As a result, 
the trial court was left to surmise or speculate, based on David’s testimony 
alone, that the proceeds from the sale of David’s separate property were the 
source of funds that created his claim for economic contribution. See Latham, 
560 S.W.2d at 485 (stating that conjecture as to the source of funds is 
insufficient to sustain the burden of tracing); see also McKinley v. McKinley, 
496 S.W.2d 540, 544 (Tex. 1973) (stating that the community presumption prevails 
if surmise or speculation is required to come to a conclusion about a 
property’s status).
        As 
indicated by the United States Supreme Court, “[t]he function of a standard of 
proof, as that concept is embodied in the Due Process Clause and in the realm of 
factfinding, is to ‘instruct the factfinder concerning the degree of 
confidence our society thinks he should have in the correctness of factual 
conclusions for a particular type of adjudication.’” Addington v. Texas, 
441 U.S. 418, 423, 99 S. Ct. 1804, 1808 (1979). By adopting the clear and 
convincing standard as the requisite degree of proof required to rebut the 
community presumption, the legislature deliberately imposed a more stringent 
burden of proof to establish separate ownership of property upon the dissolution 
of marriage. See Tex. Fam. Code 
Ann. § 3.003(b); see also Bill Vance, The Clear and Convincing 
Standard of Review in Texas: A Critique, 48 Baylor L. Rev. 391, 409 (1996) (pointing 
to section 3.003(b) of the Texas Family Code as protecting a right of 
constitutional dimension by imposing the clear and convincing standard). Our 
review of the record indicates that David did not discharge his burden to rebut 
the community presumption by clear and convincing evidence with regard to the 
funds he claimed were proceeds of his separate property. Accord Orsono, 
76 S.W.3d at 512; Robles, 965 S.W.2d at 616. Accordingly, we hold that 
the evidence in the record before us is factually insufficient to support 
David’s claim that he contributed separate property to the Parker County 
residence.[7]
        D. Harm Analysis
        When 
we are asked to review an alleged characterization error we must determine not 
only whether the trial court's finding of separate property is supported by 
clear and convincing evidence, but also whether the characterization error, if 
established, caused the trial court to abuse its discretion. See Allen v. 
Allen, 704 S.W.2d 600, 603 (Tex. App.—Fort Worth 1986, no writ). Mere 
mischaracterization of community property as separate, in the estate of the 
parties alone, does not require reversal. See Magill v. Magill, 816 
S.W.2d 530, 533 (Tex. App.—Houston [1st Dist.] 1991, writ denied) 
(citing Mundy v. Mundy, 653 S.W.2d 954, 957 (Tex. App.—Dallas 1983, no 
writ)). If the mischaracterization has only a de minimus effect on the trial 
court’s division of the community estate, then the trial court did not abuse 
its discretion. See Robles, 965 S.W.2d at 621. However, if property is 
mischaracterized and the mischaracterization is of such magnitude that it 
affects the just and right division of the community estate, we must remand the 
entire case to the trial court for a just and right division based upon the 
correct characterization of the property. Zeptner, 111 S.W.3d at 740.
        In 
the instant case, Linda maintains that, due to the trial court’s 
characterization of community property as separate, the value of such property 
was not divided as part of the community estate. Therefore, she contends that 
the trial court abused its discretion by erroneously considering David’s claim 
for economic contribution as a factor in valuing the community estate because 
the value of the mischaracterized property would have materially affected the 
trial court’s just and right division.
        The 
record indicates that the trial court relied on David’s proposed division of 
the community estate in dividing the property. In doing so, the trial court 
included only the $20,543.48 that David claimed was the community equity in the 
Parker County residence, thus reducing the actual equity in the residence by 
$294,456.52 based on David’s claim for economic contribution. With only 
$20,543.48 of community equity in the Parker County residence, the trial 
court’s resulting division was approximately 53% to 47% in favor of Linda.[8]  However, the trial court did not include the 
mischaracterized $294,456.52 in the community estate. When the mischaracterized 
$294,456.52[9]  is included in the community 
estate and awarded to David, the actual property division is extremely 
disproportionate in favor of David.
        Accordingly, 
we are persuaded that, due to the trial court’s characterization error, the 
community estate was grossly undervalued, thereby creating far more than a de 
minimus effect on the trial court’s division of the community estate. As a 
result, we hold that the trial court’s division was so unjust and unfair as to 
constitute an abuse of discretion. Therefore, we sustain Linda’s first and 
second issues.
IV. 
Conclusion
        Having 
sustained Linda's first and second issues, we need not consider her remaining 
issues. See Tex. R. App. P. 
47.1. We affirm the parties' divorce, but we reverse and remand this case to the 
trial court for a just and right division of the community estate.

  
                                                  SUE 
WALKER
                                                  JUSTICE

  
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and WALKER, JJ.
 
DELIVERED: 
March 11, 2004


NOTES
1.  
In response to Linda’s Original Petition for Divorce, David filed an answer 
denying all of Linda’s claims and counter-petitioning for divorce.
2.  
Linda agreed to her attorney’s withdrawal as indicated by a notation in the 
motion reading “AGREED” and followed by her signature.
3.  
Section 3.003 of the family code provides:
(a) 
Property possessed by either spouse during or on dissolution of marriage is 
presumed to be community property.
(b) 
The degree of proof necessary to establish that property is separate property is 
clear and convincing evidence.
Tex. Fam. Code Ann. § 3.003.
4.  
During his testimony, David stated that “the interim loan on the house in 
Parker County was 350, plus or minus—I can’t remember the exact number.”
5.  
David mentioned that his accountant had advised him to use the proceeds from the 
sale of his Colleyville residence to pay down the Parker County mortgage, but 
the accountant did not testify.
6.  
Deed and title documents are public records. Tex. Prop. Code Ann. § 13.002 (Vernon 
2004); Tex. Transp. Code Ann. § 201.501 (Vernon 1999).
7.  
Because sufficiency of the evidence is only a factor in assessing whether the 
trial court abused its discretion, and because, as demonstrated below in the 
harm analysis portion of our opinion, the factual insufficiency of the evidence 
caused the trial court to abuse its discretion in dividing the community estate, 
we need not address whether any legal insufficiency of the evidence also caused 
the trial court to abuse its discretion. In other words, Linda is not entitled 
to any greater relief even if the trial court abused its discretion based on 
legal insufficiency of the evidence.
8.  
The trial court divided the community based on Respondents Exhibit’s 3, 5, and 
6. From the record, it appears that, based on those exhibits, Linda was awarded 
approximately $82,695 in community assets and David was awarded approximately 
$72,647 in community assets.
9.  
Our holding that $294,456.52 was mischaracterized as David’s separate property 
is based strictly on the record before us. On remand, David may introduce 
corroborating evidence establishing the separate nature of these funds.