

IN THE
TENTH COURT OF APPEALS

No. 10-14-00260-CV

IN THE MATTER OF THE MARRIAGE OF
CARRIE LANELL PRICE AND NATHAN DOYLE PRICE
AND IN THE INTEREST OF A.D.P. AND J.L.P., CHILDREN

From the 249th District Court
Johnson County, Texas
Trial Court No. D201205445

MEMORANDUM OPINION

Nathan Price, appearing pro se as he did at trial, appeals the trial court's final decree of divorce for his marriage to Carrie Price.[1] We will affirm.

Nathan's pro se brief fails to comply with most of the requirements of Rule of Appellate Procedure 38.1. *See* TEX. R. APP. P. 38.1. Because we, like Carrie, have been able to discern several issues raised by Nathan, we invoke Rule 2 to suspend Rule 38.1's

---

[1] The background of the case and the evidence are well known to the parties; thus, we do not recite them here in detail. Because all the dispositive legal issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

appellant's brief requirements to expedite this matter.[2] *See id.* R. 2; *see also In re Marriage of Jordan*, 264 S.W.3d 850, 852 n.1 (Tex. App.—Waco 2008, no pet.) (stating that we review and evaluate pro se briefs with patience and liberality).

**Jurisdiction.**   Nathan generally argues that we and the trial court have no jurisdiction over his marriage and that he has the freedom to exercise religion; instead, God's law (the Bible) and the church should judge this matter.[3]  At least one court has rejected similar arguments, holding that a Texas court does have subject-matter jurisdiction in a suit for divorce over constitutional objections (the Establishment and Free-Exercise Clauses of the U.S. Constitution and the "rights of conscience" guarantee under the Texas Constitution) and that Texas' no-fault divorce law is constitutional and does not violate those same constitutional rights.  *See Waite v. Waite*, 150 S.W.3d 797, 800-801 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Waite v. Waite*, 64 S.W.3d 217, 220-22 (Tex. App.-Houston [14th Dist.] 2001, pet. denied).  We likewise reject and thus overrule Nathan's challenge to jurisdiction.

**Evidentiary and extraneous matters.**   Nathan's complaints about matters that occurred in a criminal proceeding that was pending against him at the time of the divorce trial are not properly before us and are also outside the record of this case.  Also not properly before us are Nathan's complaints about the agreed temporary orders and the

---

[2] We will, however, disregard Nathan's factual statements that are outside the record.  *See In re Marriage of Hernandez*, No. 10-09-00136-CV, 2011 WL 3821995 at *3, n.3 (Tex. App.—Waco Aug. 10, 2011, no pet.).

[3] Subject-matter jurisdiction may be raised for first time on appeal. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).

contempt order and his incarceration for failure to pay child support.[4] *See Beard v. Beard,* 49 S.W.3d 40, 69 (Tex. App.—Waco 2001, pet. denied) (final decree supplants temporary orders); *Hernandez v. Hernandez,* 318 S.W.3d 464, 466 n.1 (Tex. App.—El Paso 2010, no pet.) (courts of appeals lack jurisdiction to review contempt order on direct appeal). Nathan's complaints about documents that allegedly were not produced by Carrie in discovery are not properly before us because he did not seek relief in the trial court. *See* TEX. R. CIV. P. 215.1. Finally, in his brief Nathan requests a venue change, but that request is plainly untimely.

Any complaint about the admission of a police report pertaining to a separate incident is not preserved for appellate review because no objection was made at trial. TEX. R. APP. P. 33.1(a). And Nathan's complaint (that there is a two-year limitations period on the use of letters) about the admission of letters that he wrote to Carrie is also not preserved for appellate review because no objection was made at trial. *Id.* Moreover, no such "limitations" exists in Texas law.

**Conservatorship.** Nathan and Carrie each sought to be appointed sole managing conservator, and a jury trial was held on conservatorship. The jury found that Carrie should be appointed sole managing conservator of the two children. The trial court then appointed Carrie as sole managing conservator and Nathan as possessory conservator. Nathan complains about the appointment of Carrie as sole managing conservator. He discusses some of the evidence, along with matters outside the record (which we

---

[4] While the case was pending, Nathan became arrears in child support in the amount of approximately $34,000. He was found in contempt and was sentenced to 180 days in jail. He served a couple of months in jail before he agreed to pay and did pay the child-support arrearage.

disregard) and events in the case, and requests that we grant him "sole custody" of the children. We construe this complaint and request as a challenge to the legal and factual sufficiency of the evidence and that we should appoint Nathan as sole managing conservator.

To raise a factual-sufficiency complaint on appeal, it must be preserved by including it in a motion for new trial. TEX. R. CIV. P. 324(b)(2), (3); *Cecil v. Smith*, 804 S.W.2d 509, 510-11 (Tex. 1991). Because Nathan did not file a motion for new trial, he has not preserved for appellate review a complaint that the evidence is factually insufficient to support the jury finding that Carrie should be appointed sole managing conservator or a complaint that the jury's failure to find that he should be appointed sole managing conservator is against the great weight of the evidence.

To raise a legal-sufficiency complaint on appeal, it must be preserved in a motion for directed verdict, an objection to the submission of the jury question in the charge, a motion for JNOV or to disregard the jury finding, or a motion for new trial. Because Nathan did not do any of these items, he has not preserved for appellate review a complaint that the evidence is legally insufficient to support the jury finding that Carrie should be appointed sole managing conservator or a complaint that he established as a matter of law he should have been appointed sole managing conservator.[5]

**Property Division.** A separate bench trial was held on property division. At trial

---

[5] If we were to address Nathan's complaint, we would hold that the jury's finding was legally and factually sufficient because of the ample evidence of Nathan's abusive behavior (much of which he admitted at trial to committing) toward Carrie and the children, including toward their now-adult oldest son when he was a minor.

Carrie presented the trial court with her proposed property division, and the trial court adopted it as the division of property between the parties.[6] Because Carrie was appointed sole managing conservator, Nathan requested a disproportionate share (90%) of the marital estate. Carrie's division and valuations resulted in $371,571.00 in assets to Nathan and $379,726.79 in assets to Carrie, but those figures do not include Nathan's retirement pension, which was divided equally between the parties. Nathan testified that he believed that Carrie's testimony about the assets was "accurate," but he makes several complaints on appeal about the trial court's property division.

Nathan filed an initial request for findings of fact and conclusions of law, but because he did not file a notice of past due findings of fact and conclusions of law, he has waived any complaint that the trial court did not file findings and conclusions. *Sonnier v. Sonnier*, 331 S.W.3d 211, 214 (Tex. App.—Beaumont 2011, no pet.). He has further waived any complaints about the trial court's failure to make valuation findings. See TEX. FAM. CODE ANN. § 6.711 (West 2006) (applying rules of civil procedure to request for findings on valuation). In a bench trial where no findings of fact or conclusions of law are requested or filed, the judgment of the trial court implies all necessary findings of fact in support of it. *See Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *Sonnier*, 331 S.W.3d at 214.

> We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). A trial court has wide latitude in the exercise of its discretion in dividing the marital property in a divorce proceeding, and that division will not be

---

[6] Gold and silver coins that were in a safe-deposit box were omitted from Carrie's proposal; the trial court awarded one-half of their value to each party in the decree.

overturned on appeal unless the trial court has abused its discretion. *Id.; see Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Dankowski v. Dankowski*, 922 S.W.2d 298, 304 (Tex. App.—Fort Worth 1996, no writ). The mere fact that a trial judge may decide a matter within his discretionary authority differently than an appellate judge is not an abuse of discretion. *Jones v. Jones*, 804 S.W.2d 623, 624 (Tex. App.—Texarkana 1991, no writ) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). To constitute an abuse of discretion, the trial court's division of the property must be manifestly unfair. *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980); *see Vandiver v. Vandiver*, 4 S.W.3d 300, 303-04 (Tex. App.—Corpus Christi 1999, pet. denied).

Section 7.001 of the family code provides that the trial court shall, in its divorce decree, order a division of the marital estate in a manner that it deems just and right. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). The trial court is not required to divide the marital estate equally; however, its division must be equitable. *Zieba*, 928 S.W.2d at 790. "The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property." *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). In deciding whether a reasonable basis exists for an unequal division of the marital estate, the trial court may consider "such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff*, 615 S.W.2d at 699.

Moreover, because the trial court is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See Garner v. Garner*, 200 S.W.3d 303, 308 (Tex. App.—Dallas 2006, no pet.), *overruled on other grounds by Iliff v. Iliff,* 339 S.W.3d 74 (Tex. 2011); *see also In re A.L.E.,* 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that trial court is best able to observe and assess witnesses' demeanor and credibility and to sense "forces, powers, and influences" that may not be apparent merely from reading the record on appeal). Instead, we defer to the trial court's resolution of underlying facts and to the credibility determinations that may have affected its decision. *In re A.L.E.*, 279 S.W.3d at 427. Thus, an abuse of discretion will generally not occur when a trial court bases its discretion on conflicting evidence. *In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.).

*In re Marriage of Hernandez*, 2011 WL 3821995, at *2-3.

In a divorce case based solely on the ground of insupportability, the trial court can consider fault in the break-up of the marriage when making a just and right division of the community estate. *In re Marriage of Brown,* 187 S.W.3d 143, 144-46 (Tex. App.—Waco 2006, no pet.).

> When an appellant challenges the trial court's order on legal or factual sufficiency grounds, we do not treat these as independent grounds of reversible error but, instead, consider them as factors relevant to our assessment of whether the trial court abused its discretion. *Wells v. Wells,* 251 S.W.3d at 838; *Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient, we consider whether the court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the application of that discretion. *Wells v. Wells,* 251 S.W.3d at 838.

*In re Marriage of Grisham,* No. 10-09-00429-CV, 2010 WL 4570266, at *1 (Tex. App.—Waco Oct. 20, 2010, pet. denied) (mem. op.).

> The applicable sufficiency review comes into play with regard to the first question. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable.

*Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.) (citations omitted).

Carrie testified that she and Nathan were married in 1988 when she was age 19. She did not go to college and was a homemaker and stay-at-home mom. She home-schooled the two younger children. Nathan was ten years older and had a college education. He had been employed in "IT" and earned an annual salary in the range of $70,000 to $80,000, though he lost his job while the divorce was pending. Nathan was

eligible for retirement and had inherited over $200,000. Carrie had no separate property.

In 2010, Carrie left with the children because of Nathan's emotional and physical abuse of her and the children. They were separated for four months and reconciled with the help of church members and Nathan's agreement to counseling. After Nathan returned to his abusive conduct, Carrie left with the children again in 2012 and filed for divorce on insupportability grounds. She did not want the two younger children to experience what their oldest son had experienced. She got a job as a high-school paraprofessional with take-home monthly pay of around $700. Because Nathan was not paying child support, Carrie enrolled in Medicaid and went on food stamps. Carrie went to counseling for three years and was diagnosed with PTSD.

For the marital property, we begin with two retirement accounts. "A spouse has a community property interest in the other spouse's retirement benefits that accrued during marriage." *In re Marriage of Smith,* 115 S.W.3d 126, 132 (Tex. App.—Texarkana 2003, pet. denied) (citing *Valdez v. Ramirez,* 574 S.W.2d 748, 749 (Tex. 1978)). Further, it is not disputed by Nathan that the two retirement accounts are community property. The trial court awarded Carrie one-half of Nathan's retirement pension from his employment. The other account, a 457(b) retirement plan, had a balance of $305,312 as of March 31, 2011. The trial court awarded Carrie $200,000 of that account, plus one-half of the account exceeding $305,312 and awarded Nathan $105,312 plus one-half of the account exceeding $305,312.

The parties owned mineral interests as community property and received monthly oil-and-gas royalty checks. Carrie valued the mineral interests at $24,000, and the trial

court awarded the mineral interests to her. Nathan complains that Carrie should not have received all of the mineral interests.

For the royalty checks received while the divorce was pending, the trial court's agreed temporary orders had ordered that each party was to receive one-half of each check. Carrie testified that Nathan never gave her half of the royalty checks and that many of them were not negotiated by Nathan and had expired. As a result, the trial court ordered that the checks be negotiated and that the funds be placed in Carrie's attorney's escrow account. In the decree's property division, the trial court awarded Carrie $8,664.79 in royalty funds, and Nathan was awarded the checks (estimated by Carrie to total $6,000) received since May 13, 2013. The decree's division of the royalty checks supplanted the temporary orders. *See Beard*, 49 S.W.3d at 69.

Nathan was awarded a car (a 2002 Volkswagen) valued by Carrie at $4,460[7] and a backhoe valued by Carrie at $4,000. Nathan's complaint on appeal appears to be that the value of each of those items is only $1,500, but as we stated above, he waived his right to complain about the trial court's failure to make valuation findings.[8] In any event, Carrie testified that the Kelly Blue Book value of the car was $4,460, and Nathan testified that its value was $1,500 because it needed transmission repair. Carrie testified that Nathan

---

[7] Nathan complains that Carrie has not relinquished the title to this car. The decree provides that Nathan was awarded that car, "together with … title documents." This complaint is a matter for which Nathan must seek enforcement in the trial court.

[8] He also complains about the valuation of the motor home that he was awarded because Carrie's valuation did not include the motor home's depreciation.

valued the backhoe at $4,000, and Nathan testified that its value "would be closer to 3,000."

The trial court awarded each party the personal property "currently" in their possession. Nathan states that, while the case was pending and he was incarcerated for failure to pay child support, Carrie "broke into" his storage units, vehicle, and residence "to steal" his personal property so that she could sell it. Carrie testified that because Nathan had not been paying child support and was in jail for contempt, she sought to sell some of their community property to have money for her and the children's support; she also took personal belongings and furnishings for a home that she bought. Carrie said that she also took some community property out of storage while Nathan was in jail so that it would not be seized by the storage owner in the event that the rental was not paid.[9] Nathan complains that the decree's award to each party of the personal property "currently" in their possession does not reflect Carrie's disposition of this community property. This complaint is unclear and does not request relief, but in any event, this community property that may have been Nathan's personal property was not "currently" in his possession when Carrie may have disposed of it. This complaint thus lacks merit in this appeal.

Carrie also testified that she took some of Nathan's separate property from a storage shed to protect it from being ruined while he was in jail and that she "would be

---

[9] Nathan and Carrie had three storage units. Nathan said that a storage unit was in his name and had his lock on it, but it is unclear if that unit was one of the three units or a fourth unit that he had acquired individually.

glad to give them back."[10]  Nathan complains that Carrie has her lock on a storage unit where his "tools" are stored and that Carrie has denied him access to the contents of that unit.  It is unclear if Nathan is complaining about the separate property that Carrie said she would give back or some other personal property or separate personal property.  In any case, neither this separate property nor Carrie's apparent agreement to give back this separate property to Nathan was set forth in the decree, and it is a matter for which Nathan must seek relief in the trial court.

Finally, we address Nathan's complaint that two items that were awarded to him were mischaracterized as community property; he argues that they were his separate property because he had inherited the funds used to purchase those items.  Carrie proposed and the trial court awarded Nathan (1) the investment account with Life Partners, Inc., which was valued by Carrie at $200,000; and (2) a 2006 Winnebago motor home, which was valued by Carrie at $50,000.

> All property on hand at the dissolution of marriage is presumed to be community property.  TEX. FAM. CODE ANN. § 3.003(a) (Vernon 2006).  It is a rebuttable presumption requiring a spouse claiming assets as separate property to establish its separate character by clear and convincing evidence.  TEX. FAM. CODE ANN. § 3.003(b) (Vernon 2006).

*In re Grisham*, 2010 WL 4570266, at *1.

> When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review.  *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002); *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).  Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (Vernon 2002); *Transp. Ins. Co.*

---

[10] These items include "workshop items," an antique stove, an antique desk, a piano, and an RCA Victrola.

*v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979); *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh'g). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Addington*, 588 S.W.2d at 570. Therefore, in reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *C.H.*, 89 S.W.3d at 25.

*Boyd,* 131 S.W.3d at 611.

The characterization of property as either community or separate is determined by the inception of title to the property. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.* The major consideration in determining the characterization of property as community or separate is the intention of spouses shown by the circumstances surrounding the inception of title. *Scott v. Estate of Scott,* 973 S.W.2d 694, 695 (Tex. App.—El Paso 1998, no pet.).

In order to overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *See Estate of Hanau v. Hanau,* 730 S.W.2d 663, 667 (Tex. 1987) (citing *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965)). The burden of tracing is a difficult, but not impossible, burden to sustain. *Latham v. Allison,* 560 S.W.2d 481, 484 (Tex. Civ. App.—Fort Worth 1977, writ ref'd n.r.e.). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 354 (Tex. App.—Austin 2002, pet. denied).

The issue of whether the property is separate or community property is determined by the facts that, according to rules of law, give character to the property. *Robles v. Robles,* 965 S.W.2d 605, 615 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property

by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex. 1975). However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails. *Hanau,* 730 S.W.2d at 667.

When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds. *Latham,* 560 S.W.2d at 485. Moreover, as a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Zagorski v. Zagorski,* 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g); *Bahr v. Kohr,* 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no pet.); *McElwee v. McElwee,* 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Any doubt as to the character of property should be resolved in favor of the community estate. *Akin v. Akin,* 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

*Id.* at 612; *see also Bush v. Bush,* 336 S.W.3d 722, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

We begin with Carrie's testimony. She testified that Nathan had inherited over $200,000 from his parents' estate, as evidenced by two checks that were in Nathan's sister's possession, according to what Nathan had told her. Carrie said that these funds were Nathan's separate property and that she was not asking the trial court for division or access to those funds. In the decree, the trial court ordered that two estate checks made payable to Nathan (in the amounts of $150,000 and $80,000) were Nathan's separate property.

Next, Carrie testified that she and Nathan purchased a life settlement agreement by investing $200,000 in Life Partners, Inc. in November 2010 with a check from their joint account. According to Life Partners account documents that Carrie offered and the trial

court admitted, the account was set up as a "joint tenant with right of survivorship account" in both of their names.

On cross-examination, in response to Nathan's question about how "inheritance monies" were used, Carrie said, "Everything we bought was out of our community bank account when we were together." She then said that she remembered that $200,000 went to Life Partners and she stated that Nathan was getting that property under her proposal. Carrie never testified that the $200,000 that was invested in Life Partners was Nathan's inherited money or his separate property.

Regarding the Winnebago, Carrie testified that it was purchased during the marriage in 2010 or 2011 for approximately $50,000. The Winnebago's title was admitted, and it is in Carrie's name. After questioning Carrie about Life Partners, Nathan then asked her:

> Q. And then another 50,000 would be life insurance properties that would be my property that would have been the motor home, correct?
>
> A. I am sorry, what?
>
> Q. There was another $50,000, basically $50,000 - -
>
> A. The motor home is listed under yours.

Carrie did not state that the Winnebago was purchased with Nathan's separate property. The only testimony by Nathan on the Life Partners account and the Winnebago was: "The Exhibit H [the Life Partners account documents], I think, we've determined was not community property. Also Exhibit J [the Winnebago]."

At the conclusion of the bench trial and during the trial court's ruling on property

division, the trial court stated: "The Court has nothing before it, evidence, that anything of this that's listed on Petitioner's [Exhibit] 19 [Carrie's proposed property division] is separate property." In accordance with Carrie's proposed property division, the trial court awarded the Life Partners account and the Winnebago to Nathan.

Nathan did not present clear and convincing evidence that the Life Partners account and the Winnebago awarded to Nathan were his separate property. Carrie's testimony indicated that those two items were community property. She said that the check used for the Life Partners account was from their joint account, and the account was set up as "joint tenant with right of survivorship account" in both of their names. *See Boyd*, 131 S.W.3d at 612 ("However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails.") (citing *Hanau*, 730 S.W.2d at 667.). For the Winnebago, Carrie said that "we" purchased it, and the title was in her name.

Nathan's testimony was minimal and conclusory. Furthermore, his testimony does not trace the items, and it is not corroborated by any documentary tracing. *See Bush*, 336 S.W.3d at 743 ("It is well established that, in order to show that property purchased during the marriage is separate property, it is not enough to simply state that the funds used to purchase the property were separate property funds; instead there *typically* must be some sort of documentary tracing to show that the funds used were separate property."); *Boyd*, 131 S.W.3d at 612 ("Moreover, as a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption."). The trial court did not abuse its

discretion in characterizing these two items as community property and then awarding them to Nathan.

In conclusion, we overrule all of Nathan's complaints about the trial court's property division. The trial court's division of the marital estate—awarding Carrie approximately 51% and Nathan approximately 49%—was just and right and was not an abuse of discretion.[11]

Having overruled all of Nathan's complaints, we affirm the trial court's final decree of divorce.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed October 15, 2015
[CV06]



---

[11] Nathan asserts in his brief that if the Life Partners account and the Winnebago are excluded as community property, the marital estate division would be $379,726 to Carrie (75%) and $120,571 to Nathan (25%). If Nathan had proved that the Life Partners account and the Winnebago were his separate property, we would still hold that the trial court's division was just and right and not an abuse of discretion, based on Carrie's and Nathan's capacities and abilities, the benefits that Carrie would have derived from continuation of the marriage, Nathan's fault in the break-up of the marriage, their relative educations, the disparity of ages, the size of Nathan's separate estate, and Nathan's history of refusing to pay child support. And it is notable that, in recent correspondence inquiring about the status of this appeal, Nathan reported that he is currently in jail again after being held in contempt again for failure to pay child support.