**In the MATTER OF the MARRIAGE OF Julie Maree STEGALL and Kerry Dean Stegall and in the Interest of T.J.S., a Child**

No. 07-15-00392-CV

Court of Appeals of Texas, Amarillo.

May 12, 2017

Christopher K. Wrampelmeier, for Appellant.

Beth Hearn, Georganna L. Simpson, Dallas, for Appellee.

Before CAMPBELL and PIRTLE, JJ., and HANCOCK, S.J. [1]

## OPINION

Mackey K. Hancock, Senior Justice

Appellant, Julie Maree Stegall, appeals the trial court's Final Decree of Divorce, limited to the court's property division and, specifically, the classification of cattle as the separate property of appellee, Kerry Dean Stegall. She contends that the mischaracterization of this property constitutes an abuse of discretion that requires reversal of the trial court's just and right division of the community estate. Agreeing with Julie's contention, we will reverse.

### Factual and Procedural Background

Julie and Kerry were married on April 24, 2009. Prior to the marriage, Kerry traded cattle. By his own assessment, Kerry did not keep good records. He did not know the exact amount of money or heads of cattle that he possessed on the date of his marriage to Julie, but the trial court found that he had "approximately $140,000 in cash, several motor vehicles and trailers, over 100 head of cattle and calves, hay, forage, saddles and tack, 30 head of horses, a residence, and two other pieces of real property" on that date. Kerry traded cattle throughout the marriage and Julie worked sporadically. On November 26, 2013, Julie filed for divorce.

On January 7 and 8, 2015, the trial court held a bench trial in the divorce. After hearing evidence, the trial court granted the divorce, entered orders regarding the child of the marriage, divided the community estate, and confirmed the parties' separate property. The trial court classified "all cattle, calves in gestation or on the ground, hay, feed, forage, feed stuff, feeders, tubs, tanks, and vet supplies, currently under the control of [Kerry] or in Victoria, Texas, or owned by [Kerry]'s business, One More Little Deal" as Kerry's separate property. Julie seeks to appeal this classification.

Julie presents six issues by her appeal. Her first issue contends that the trial court abused its discretion by classifying the cattle as Kerry's separate property. By her second issue, Julie contends that there was sufficient evidence to properly determine the value of the marital estate. Julie's third through sixth issues identify four factors that would constitute an abuse of discretion if they were considered by the trial court in making the just and right division of the community estate.

In his response brief, Kerry filed a motion to dismiss contending that Julie voluntarily accepted benefits under the divorce decree and is, therefore, estopped to challenge the judgment on appeal. Julie re-

1. Mackey K. Hancock, Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

sponds contending that she accepted the benefits of the divorce decree due to economic necessity.

### Motion to Dismiss

 Kerry contends that Julie is estopped from challenging the divorce decree on appeal because she voluntarily accepted the benefits of the decree. "[T]he acceptance-of-benefits doctrine is a fact-dependent, estoppel-based doctrine focused on preventing unfair prejudice to the opposing party." *Kramer v. Kastleman*, 508 S.W.3d 211, 213-14 (Tex. 2017). Being rooted in equity, the doctrine bars an appeal if an appellant voluntarily accepts a judgment's benefits and such acceptance causes the opposing party to be disadvantaged. *Id.* at 217. The Texas Supreme Court has recently clarified that,

> before denying a merits-based resolution to a dispute, courts must evaluate whether, by asserting dominion over assets awarded in the judgment under review, the appealing party clearly intended to acquiesce in the judgment; whether the assets have been so dissipated as to prevent their recovery if the judgment is reversed or modified; and whether the opposing party will be unfairly prejudiced.

*Id.* at 227. In determining whether the doctrine applies in a given case, several nonexclusive factors are relevant, including:

1) whether acceptance of benefits was voluntary or was the product of financial distress;

2) whether the right to joint or individual possession and control preceded the judgment on appeal or exists only by virtue of the judgment;

3) whether the assets have been so dissipated, wasted, or converted as to prevent their recovery if the judgment is reversed or modified;

4) whether the appealing party is entitled to the benefit as a matter of right or by the nonappealing party's concession;

5) whether the appeal, if successful, may result in a more favorable judgment but there is no risk of a less favorable one;

6) if a less favorable judgment is possible, whether there is no risk the appellant could receive an award less than the value of the assets dissipated, wasted, or converted;

7) whether the appellant affirmatively sought enforcement of rights or obligations that exist only because of the judgment;

8) whether the issue on appeal is severable from the benefits accepted;

9) the presence of actual or reasonably certain prejudice; and

10) whether any prejudice is curable.

*Id.* at 228-29. Kerry, as movant and appellee, bears the burden of proving that the acceptance of benefits doctrine applies in this case. *Id.* at 217; *Richards v. Richards*, 371 S.W.3d 412, 414 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (op. on reh'g).

 Kerry's contention that Julie accepted the benefits of the divorce decree is based on Julie cashing a check for half of the parties' 2013 federal income tax refund ($1,603.50), and transferring half of Kerry's 401(k) from his former employer into her own 401(k) account ($1,099.82), both of which were awarded to Julie by the divorce decree. Julie acknowledges that she accepted these benefits but contends that her acceptance was rendered involuntary due to financial duress. While the record evidence does not support the conclusion that Julie's acceptance of these benefits was necessitated by financial duress or

other circumstances,[2] we conclude that Kerry has failed to establish that he has been irremediably prejudiced by Julie's acceptance of these benefits.

█ Clearly, each of the benefits accepted by Julie has a definite cash value. "Cash is fungible, and if it can be restored or otherwise taken into consideration in redivision of the marital estate, use of cash does not prejudice the nonappealing party and does not bar an appeal." *Kramer*, 508 S.W.3d at 224. The check for half of the tax return was a direct cash payment and, while the 401(k) transfer was not a cash transfer, it was a transfer of a liquidated amount of money from one account to another. Nothing in Kerry's motion or in the record evidence establishes that Julie would be unable to restore this relatively modest amount of money, a total of $2,703.32, if she were to prevail on appeal but receive a less favorable distribution on retrial. As such, Kerry has failed to establish that he was actually prejudiced by Julie's acceptance of benefits or that any prejudice he might ultimately suffer would not be curable. *See id.* at 232. In addition, nothing in Kerry's motion or the record reflects that Julie's acceptance of these benefits was a clear intent to acquiesce in the judgment's validity. *See id.* Rather, Julie has consistently challenged the trial court's characterization of certain property as Kerry's separate property. In the absence of proof of irremediable disadvantage to Kerry and circumstances reflecting Julie's clear intent to acquiesce in the judgment's validity, we are obliged to dispose of the present appeal on the merits. *Id.* at 232.

We deny Kerry's motion to dismiss.

## Character of Cattle

By her first issue, Julie contends that the trial court abused its discretion in dividing the community estate in that it mischaracterized all of the cattle, including calves in gestation and on the ground, as Kerry's separate property. Kerry responds that, by applying the inception-of-title rule and minimum-sum-balance presumption, the trial court had evidence that would allow it to determine that all of the cattle and related inventory was Kerry's separate property.

As a reviewing court, we review a trial court's characterization of marital property under an abuse of discretion standard. *In re Marriage of Glynn*, No. 07-13-00095-CV, 2014 WL 7448675 at *4, 2014 Tex. App. LEXIS 13952 at *12 (Tex. App.—Amarillo Dec. 31, 2014, no pet.) (mem. op.) (citing *Boyd v. Boyd*, 131 S.W.3d 605, 617 (Tex. App.—Fort Worth 2004, no pet.)). The trial court abuses its discretion if it acts without reference to guiding rules or principles, or if its action is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Under an abuse of

**2.** That Julie was not required to accept these benefits due to economic duress or other circumstances can be seen by the process through which she transferred the 401(k) funds. According to her affidavit, Julie had $5,700.42 in her banking accounts on June 14, 2016, the day she authorized the transfer of the 401(k) funds awarded to her by the divorce decree. She states that she was anticipating additional attorney's fees "in the coming months" that would be similar in amount to a $2,298.40 payment she made in June. Clearly, anticipating future expenses months in advance cannot be said to constitute economic necessity that would render the acceptance of benefits under a disputed divorce decree involuntary. Even after accounting for her June payment of attorney's fees, Julie attested that she had in excess of $2,500 in her accounts. Further, Julie did not actually withdraw the 401(k) funds until October of 2016. Consequently, we do not conclude that the evidence supports the conclusion that Julie accepted the divorce decree's award of half of Kerry's 401(k) due to economic necessity.

discretion standard, legal and factual sufficiency are not independent grounds for error; rather, they are relevant factors in assessing whether the trial court abused its discretion. *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). A trial court does not abuse its discretion if there is some evidence of substantive and probative character to support the decision or if reasonable minds could differ as to the result. *Id.*

In the trial of a divorce, the trial court has the responsibility to divide the community estate of the parties in a just and right manner, considering the rights of the parties. Tex. Fam. Code Ann. § 7.001 (West 2006). The trial court's division may not be disturbed on appeal unless the appellant demonstrates from the record evidence that the division was so unjust and unfair as to constitute an abuse of discretion. *Warriner v. Warriner*, 394 S.W.3d 240, 247 (Tex. App.—El Paso 2012, no pet.). If reversible error affecting the just and right division of the community estate is found, the reviewing court must remand the entire community estate for a new division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).

In considering the property on hand at the time of the divorce, we begin with a presumption that all property on hand at the time of dissolution of the marriage is community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006). To rebut this presumption, the property's separate character must be proven by clear and convincing evidence. *See id.* § 3.003(b). The character of the property as community or separate is established by the inception-of-title doctrine. *John Hancock Mut. Life Ins. Co. v. Bennett*, 133 Tex. 450, 128 S.W.2d 791, 795 (Tex. 1939). To properly support an assertion that property is separate, the proponent must introduce documentary evidence sufficient to overcome the community presumption. *Boyd*, 131 S.W.3d at 612. That party meets this burden by tracing and clearly identifying the property as separate. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curium). To trace the property, the party claiming the property as separate must establish the separate origin of the property through evidence showing the time and means by which said property was acquired. *Moroch v. Collins*, 174 S.W.3d 849, 856-57 (Tex. App.—Dallas 2005, pet. denied). If the evidence shows that the separate property and community property have been so commingled as to defy segregation and identification, the statutory presumption prevails and the property is considered part of the community estate. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987).

The minimum-sum-balance presumption can apply to establish the separate character of property when separate and community funds have been commingled in a manner that defies segregation. *See Hill v. Hill*, 971 S.W.2d 153, 158 (Tex. App.—Amarillo 1998, no pet.). The minimum-sum-balance presumption presumes that separate funds sink to the bottom and community funds are drawn out first. *Id.* In effect, to satisfy this burden, the party claiming funds are separate must show that separate funds were deposited into an account that was subsequently commingled with community funds but the balance of the account never reached zero. *Id.* If the party proves this, it is presumed that the lowest balance is separate property. *See id.*

In the present case, Kerry testified that he owned at least 163 head of cattle at the time of his marriage to Julie. The trial court found that Kerry possessed 191 head of cattle and calves in gestation or on the ground at the time of the di-

vorce. Kerry contends that, under the minimum-sum-balance presumption, the cattle can be established to be his separate property. However, we must start with the presumption that property possessed by either spouse during or on dissolution of marriage is community property. Tex. Fam. Code Ann. § 3.003(a); *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 664 (Tex. App.—San Antonio 1990, no writ). To establish property is separate requires clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b); *Gutierrez*, 791 S.W.2d at 664. Kerry can overcome the community presumption by tracing, but this burden is not met when the assets on hand have been so commingled as to defy resegregation and identification. *Estate of Hanau*, 730 S.W.2d at 667; *Gutierrez*, 791 S.W.2d at 664. Kerry's proof does not meet this burden because the asset that he attempted to trace has become so commingled as to defy resegregation and identification. This is so because the offspring of separate property cattle born during the marriage are community property cattle. *Gutierrez*, 791 S.W.2d at 664-65 (citing *Blum v. Light*, 81 Tex. 414, 16 S.W. 1090, 1092 (1891)). In the present case, the cattle born during the marriage were commingled with Kerry's herd of separate cattle and nothing in the record indicates that the cattle were segregated. *See id.* at 665. This is especially clear when Kerry's testimony about the cattle he owns was uncertain.[3] Further, little of Kerry's testimony about the cattle is corroborated by other evidence which makes it insufficient to support the trial court's finding that the cattle are Kerry's

separate property.[4] *See Boyd*, 131 S.W.3d at 612; *Robles v. Robles*, 965 S.W.2d 605, 616 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). Additionally, Kerry made no effort to identify or segregate the cattle that he brought into the marriage from the calves that were born during the marriage. Finally, it is doubtful that the minimum-sum-balance presumption can be applied to cattle since cattle, unlike cash, is not fungible.

Because the separate property cattle that Kerry brought into the marriage was so commingled with the community property cattle that were born during the marriage as to defy resegregation and identification, Kerry failed to meet his burden to overcome the community presumption. *See Estate of Hanau*, 730 S.W.2d at 667; *Gutierrez*, 791 S.W.2d at 664. Consequently, we conclude that the trial court abused its discretion in finding that 191 head of cattle and calves in gestation or on the ground are the separate property of Kerry and not part of the community estate. Because the cattle constitute a large portion of the community estate, the trial court's mischaracterization of this property as Kerry's separate property had a profound affect on the just and right division of the community estate and we must, therefore, remand the entire community estate for a new division. *See Jacobs*, 687 S.W.2d at 733. We sustain Julie's first issue, reverse the trial court's just and right division of the community estate, and

**3.** Kerry testified that he did not know how many head of cattle he owned at the time of trial. However, he testified to having 118 head of cows, yearlings, and bulls as well as at least 33 head of calves. However, when he was asked if he had any more cattle inventory, he testified, "[n]ot to the best of my knowledge, and I'm not 100 percent sure that they're all

there." Kerry's inexactness was due to the fact that, "I don't do good records."

**4.** Kerry's corroborating evidence consists of a 2005 bank statement reflecting that he owned 58 head of cattle; a record that he leased something, presumably cattle, to Frank Phillips College; and a 2009 tax return indicating that he owned five cows.

remand for a new division of the community estate.[5]

### Conclusion

For the foregoing reasons, we reverse the property-division portion of the judgment and remand that portion for a new trial. *See* TEX. R. APP. P. 43.2(d). In all other respects, the judgment is affirmed. *See* TEX. R. APP. P. 43.2(a).

---

**5.** Because Julie's remaining issues, if sustained, would result in remand for a new property division, we need not address them in this opinion. *See* TEX. R. APP. P. 47.1.