**Opinion issued December 21, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-20-00143-CV**

————————————

**ELMER LAWRENCE GOODE, Appellant**

**V.**

**GERALDINE VARGAS GARCIA, Appellee**

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-25271**

---

**MEMORANDUM OPINION**

This is an appeal from a division of property in a final divorce decree following a bench trial. In two issues, appellant Elmer Lawrence Goode argues that the trial court erred by awarding cash from a bank account and two parcels of real

property to appellee Geraldine Vargas Garcia. In both issues, Goode contends that the properties awarded to Garcia were his separate property, but even if they were community property, awarding them to Garcia was not a just and right division of the marital estate. We affirm.

## Background

The parties met in 1999 when Goode was fifty-five and Garcia was eighteen years old. They began living together in August 2000 and married in May 2003. They have three biological children. The oldest child was eighteen years old at the time of trial. The younger two children are twins who were six years old at trial.

In April 2017, the parties separated and Goode filed for divorce. In his original petition for divorce, the live pleading on file at the time of trial, Goode stated that the parties married in May 2003 and are the parents of three children.[1] Goode requested that the trial court appoint the parties as joint managing conservators of the children and grant Goode the right to designate the children's primary residence. Regarding marital property, Goode's petition succinctly stated, "There is no community property for division."

---

[1] At trial, Goode disputed that he and Garcia were ever married and that he was the father of the oldest child, even though he alleged in his divorce petition that he was married to Garcia and that the oldest child was the parties' child. Goode also testified that he received social security benefits for the oldest child because he claimed her as his child when applying for the benefits. The final divorce decree found that the parties were married and that they are the parents of all three children. Goode does not challenge these findings on appeal.

Garcia filed an answer to Goode's petition with a general denial and a request for costs and attorney's fees. She also filed a counterpetition, agreeing with Goode on the date of the parties' marriage and their children and alleging cruel treatment as grounds for divorce. She sought either sole managing conservatorship of the children or joint managing conservatorship with the right to determine the children's primary residence. She asked the court to divide the community estate if the parties could not agree to a division, and she requested a disproportionate share of the community estate as well as her own separate property and reimbursement of community funds that Goode allegedly used to benefit his separate estate.

At a bench trial, Goode testified that his income during the parties' marriage consisted of $3,500 per month in social security benefits and income from leasing houses on twelve real properties he owned.[2] Goode testified that he owned nine of the properties prior to marriage and he bought three properties during the marriage. He further testified that he earned $10,000 per month on the rental properties until an unspecified time when most of the houses flooded and became uninhabitable. Goode did not repair the houses, and his rental income was diminished to $2,200 per month. Goode estimated the value for most of the properties but did not produce any

---

[2]    Goode claimed all twelve properties as his separate property and offered into evidence ten deeds, including the deeds for the properties disputed in this appeal. Goode acknowledged he could not find the deeds to two of the properties.

documentary evidence establishing the value of any property. For the three properties purchased during the parties' marriage—properties on Lear Street, Redondo Drive, and Barbil Lane—Goode acknowledged that he purchased the houses with his funds. Regarding the Redondo Drive property specifically, Goode testified he bought that property with "funds [he] already had" that he "had accumulated over the years."

Goode's funds apparently referred to his checking account that he had maintained prior to and after meeting Garcia and which he used for all his dealings. He estimated that the account had "[p]robably about $380,000" in it before the parties married and "over $60,000" at the time of trial. He also testified that he deposited the rental income and social security benefits in the account, and he acknowledged that he commingled the funds in his account. Goode did not offer any documentary evidence supporting his testimony about the balances in the account or showing what funds were used to purchase the three properties acquired during the marriage.

Goode testified that Garcia did not work during the parties' marriage. He testified that he supported her and the children after the parties separated, but he acknowledged that he did not repair any of his rental properties for Garcia to live in with the children nor did he offer to do so.

Garcia testified that she did not work during the marriage. When the parties separated, Garcia and the children moved into a women's shelter for three months because Goode abused her and did not provide financial support for her until after the parties attended mediation during pretrial proceedings. Garcia later moved into a one-bedroom apartment with the children. At the time of trial, Garcia worked twelve hours per week cleaning houses and had earned a GED. She asked the court to grant her primary custody of the young twins.

Garcia also asked the court to award her two of the three real properties purchased during the marriage so that she could repair and live in one house and repair and sell the other house. The trial court admitted into evidence Garcia's inventory and appraisement of the three parcels of real property purchased during the marriage. The inventory and appraisement showed values for each of the three properties and for other personal property that she asked the court to award her. Goode did not file an inventory or appraisement of any property.

Garcia further asked the court to award her at least half of the most recent balance in Goode's checking account. The only documentary evidence of the account was admitted by Garcia and showed a list of transactions posted in the account between January 1, 2011, and May 14, 2018, more than a year before trial

in August 2019.[3] The most recent balance of the account in May 2018 was $209,624. In March 2017, the month before the parties separated, the balance was nearly $375,000.

At the end of trial, the court orally granted the parties' divorce and took the remaining issues under advisement. The final divorce decree dissolved the marriage and appointed the parties as joint managing conservators of the children. Neither party challenges the trial court's appointment of conservators.

The final divorce decree also divided the parties' community property. Garcia was awarded $104,812 in cash and two real properties—Redondo Drive and Barbil Lane—that were purchased during the marriage. The decree also awarded each party various property in their possession, including cash, vehicles, furniture, clothing, and jewelry. The decree did not include findings of the value of the community estate as a whole or the values for any of the various properties awarded to the parties, other than the amount of cash awarded to Garcia. Neither party filed a request for findings of fact and conclusions of law from the trial court. *See* TEX. FAM. CODE § 6.711 (requiring trial court in divorce suit, on party's request, to file written findings of fact and conclusions of law regarding characterization and value of marital estate on which disputed evidence was presented).

---

[3] The record on appeal indicates that this was the only documentary evidence of the account that Goode produced during pretrial discovery.

Goode filed a motion for new trial arguing that the trial court impermissibly divested him of his separate property and did not divide the community estate in a just and right manner. *See id.* § 7.001 (requiring trial court to divide community property in "just and right" manner). The motion for new trial was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal timely followed.[4]

---

[4] Goode filed the notice of appeal after the deadline to perfect the appeal but within fifteen days of this deadline, but he did not file a motion to extend time within this time period. *See* TEX. R. APP. P. 26.1(a)(1), 26.3. Under this circumstance, a motion to extend time is necessarily implied so long as Goode acted in good faith in late filing the notice. *See Doe v. Brazoria Cty. Child Protective Servs.*, 226 S.W.3d 563, 570–71 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997). To imply a motion to extend time, the appellant must provide a reasonable explanation for late filing the notice of appeal. *Doe*, 226 S.W.3d at 571; TEX. R. APP. P. 10.5(b)(2)(A) (requiring motion to extend time to file notice of appeal to state facts relied on to reasonably explain need for extension). Upon this Court's request to provide a reasonable explanation, Goode filed a motion to extend time to file the notice of appeal, stating that the hearing on his motion for new trial was reset several times in the trial court, and he filed the notice of appeal the day after the trial court denied his motion for new trial. *See Doe*, 226 S.W.3d at 571 (stating that "reasonable explanation" is "any plausible statement of circumstances indicating that failure to file within the [specified] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance"). Ten days have passed without a response from Garcia. *See* TEX. R. APP. P. 10.3(a). Although neither party challenges our jurisdiction over this appeal, we may review it sua sponte. *Malone v. PLH Grp., Inc.*, 570 S.W.3d 292, 296 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Appellate courts are required to consider their jurisdiction sua sponte."). We conclude that Goode reasonably explained that he acted in good faith in late filing the notice of appeal, which necessarily implies a motion to extend time to file his notice of appeal. The Court grants Goode's motion to extend time and concludes that the notice of appeal was timely filed.

**Classification and Division of Property**

Goode organizes his issues based on the type of property awarded to Garcia in the final divorce decree. In his first issue, Goode challenges the monetary award. In his second issue, Goode challenges the award of real property. In both issues, Goode similarly argues that the trial court divested him of his separate property and that, to the extent the property was community property, the trial court's disposition of it was not "just and right."

## A. Standard of Review

In a divorce proceeding, we review a trial court's classification and division of property for an abuse of discretion. *Lynch v. Lynch*, 540 S.W.3d 107, 127 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *In re Marriage of Stegall*, 519 S.W.3d 668, 675 (Tex. App.—Amarillo 2017, no pet.) (reviewing trial court's finding that certain cattle were husband's separate property for abuse of discretion). The trial court has broad discretion to divide the marital estate, and appellate courts must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Lynch*, 540 S.W.3d at 127 (citing *Murff v. Murff*, 315 S.W.2d 696, 698 (Tex. 1981)). A trial court has no discretion, however, to award either spouse's separate property to the other spouse. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977) ("Trial courts have a broad latitude in the division of the marital

community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other.").

The party challenging a trial court's division of property must show that the court "clearly abused its discretion by a division or an order that is manifestly unjust or unfair." *Lynch*, 540 S.W.3d at 127 (quoting *Barras v. Barras*, 396 S.W.3d 154, 164 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *Id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

In family law cases, legal and factual sufficiency challenges are not independent grounds for asserting error, but they are relevant factors in determining whether the trial court abused its discretion. *Id.* In determining whether the trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Id.* We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.*

In a legal sufficiency review, appellate courts consider all the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could

not do so. *Cohen v. Bar*, 569 S.W.3d 764, 773–74 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005), and *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). In a factual sufficiency review, we consider all the evidence for and against the challenged finding and set the finding aside only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Id.* at 774 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). If the division of marital property lacks sufficient evidence in the record to support it, then the trial court's division is an abuse of discretion. *Lynch*, 540 S.W.3d at 127. If, however, some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *Cohen*, 569 S.W.3d at 774.

**B.     Governing Law**

**1.     Classification of Property**

The Family Code defines a spouse's separate property as property "owned or claimed by the spouse before marriage" or "acquired by the spouse during marriage by gift, devise, or descent," and any "recovery for personal injuries" sustained during the marriage, with limitations not relevant here. TEX. FAM. CODE § 3.001; *see* TEX. CONST. art. XVI, § 15 ("All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse[.]"). Community property, on the other hand,

is "property, other than separate property, acquired by either spouse during marriage." TEX. FAM. CODE § 3.002; *see Brown v. Wokocha*, 526 S.W.3d 504, 508 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Community property is all property that was acquired by either spouse during the marriage that is not separate property."). There is a statutory presumption that all property "possessed by either spouse during or on dissolution of marriage is . . . community property." TEX. FAM. CODE § 3.003(a); *see Brown*, 526 S.W.3d at 508–09.

To overcome the community-property presumption, the spouse claiming separate property must establish that fact through "clear and convincing evidence." TEX. FAM. CODE § 3.003(b); *see Brown*, 526 S.W.3d at 509. "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Vallalpando v. Vallalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

The classification of property as either separate or community property is determined by its character at the inception of title. *Id.*; *see In re Marriage of Stegall*, 519 S.W.3d at 674 ("The character of the property as community or separate is established by the inception-of-title doctrine.") (citing *John Hancock Mut. Life Ins. Co. v. Bennett*, 128 S.W.2d 791, 795 (Tex. 1939)). "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally

11

vested." *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To prove that property was separate at inception of title, the spouse must trace and clearly identify the property claimed to be separate. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam) (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)); *Robles v. Robles*, 965 S.W.2d 605, 614 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Tracing separate property requires establishing the separate origin of the property through evidence showing the time and means by which said property was acquired. *In re Marriage of Stegall*, 519 S.W.3d at 674.

If the evidence shows that separate property has become so commingled with community property as to defy segregation and identification, the statutory presumption prevails and the property is considered part of the community estate. *Id.* (citing *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987)). Furthermore, mere testimony that the property was purchased with separate funds, without any tracing of the funds, generally does not suffice to rebut the presumption. *Robles*, 965 S.W.2d at 614. If a spouse fails to rebut the Family Code's presumption of community property, the trial court's classification of that property as community property does not divest the spouse of separate property but is rather "a necessary classification of property as set by the community presumption." *Pearson*, 332 S.W.3d at 364. If the spouse with the burden to establish that property is separate

12

does not present adequate evidence to meet that burden, the trial court does not err in characterizing separate property as community property. *Brown*, 526 S.W.3d at 509.

## 2. Division of Community Property

The Family Code requires the trial court to divide community property in a "just and right" manner "having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE §7.001. Mathematical precision in dividing property in a divorce is usually not possible, but the division must be equitable. *Murff*, 615 S.W.2d at 700; *Lynch*, 540 S.W.3d at 128; *see Robles*, 965 S.W.2d at 621 (stating that trial court "may order an unequal division of the community property where a reasonable basis exists for doing so"). When, as here, the trial court did not file findings of fact, we presume the court made all the necessary findings to support its judgment. *Brown*, 526 S.W.3d at 507.

For an appellate court to determine whether the trial court divided the community estate in a "just and right" manner, we must have the trial court's findings on the value of those divided assets. *In re Marriage of Harrison*, 557 S.W.3d 99, 141 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *Brown*, 526 S.W.3d at 507. On a party's request in a divorce case, trial courts must file written findings of fact, "including the characterization and value of all assets, liabilities, claims, and offsets on which disputed evidence has been presented." TEX. FAM.

CODE § 6.711(a). Without such findings, appellate courts cannot know the basis for the trial court's division of property, the values assigned to the community assets, or the percentage of the marital estate that each party received. *In re Marriage of Harrison*, 557 S.W.3d at 141; *Brown*, 526 S.W.3d at 507; *see Robles*, 965 S.W.2d at 621 (stating that role of appellate court is only to determine whether trial court abused its discretion in disposing of community property, and appellate court does not have authority to render judgment dividing marital property).

Furthermore, in the absence of findings of fact, appellate courts cannot know whether the trial court intended the property division to be equal or disproportionate among the parties, and if disproportionate, "what factors the trial court found to warrant an unequal distribution if one was intended." *See Brown*, 526 S.W.3d at 507–08 (stating that party who does not request findings of fact from trial court cannot establish whether court intended property division to be equal or disproportionate or what facts trial court found to warrant unequal distribution if one was intended). The parties' property inventories filed in the trial court cannot substitute for a trial court's findings of fact. *Id.* at 507.

## C. Monetary Award

In his first issue, Goode challenges both the trial court's classification of the funds in the bank account as community property and the amount of money the trial court awarded to Garcia. Goode contends that he and Garcia were the only two

14

witnesses who testified at trial and that they "provided very little specific information upon which the trial court could make a reasoned decision," but the trial court awarded Garcia a specific dollar amount. Goode contends that the trial court abused its discretion in making a monetary award to Garcia because the award had little support in the parties' testimony.

Garcia responds that Goode did not meet his burden to establish by clear and convincing evidence that the money in his checking account was separate property because he did not trace and identify his separate property. Garcia further argues that the list of transactions for the checking account was admitted into evidence and that Goode did not produce any other evidence concerning the account in discovery or to rebut her evidence at trial.

Goode testified that he maintained a single bank account in his name at the time of trial and that he had maintained the account prior to his marriage to Garcia. He also testified that he had about $380,000 in the account before he married Garcia and had "over $60,000" in the account at the time of trial. Goode acknowledged that his income during the parties' marriage consisted of social security benefits and rental income from his twelve real properties and that this income was deposited into the bank account. Garcia introduced and the trial court admitted into evidence the most recent account balance for the account—and the only one that Goode had produced in discovery—showing the most recent balance in May 2018, more than a

year before trial, of $209,624. Goode did not offer any documentary evidence. The final divorce decree awarded Garcia $104,812, exactly half of the most recent account balance. Goode did not request findings of fact or conclusions of law from the trial court.

### 1. Classification of Checking Account Funds

Because Goode possessed the cash in the bank account during and on dissolution of his marriage to Garcia, the cash is presumptively community property. *See* TEX. FAM. CODE § 3.003(a); *Brown*, 526 S.W.3d at 508. As the party claiming the cash as his separate property, Goode had the burden to establish the separate character of the cash by clear and convincing evidence. *See* TEX. FAM. CODE § 3.003(b); *Brown*, 526 S.W.3d at 508–09. To meet his burden, Goode was required to trace and clearly identify the cash to show that it was his separate property at inception of title. *See Pearson*, 332 S.W.3d at 363; *In re Marriage of Stegall*, 519 S.W.3d at 674; *Vallalpando*, 480 S.W.3d at 806; and *Robles*, 965 S.W.2d at 614.

Goode offers very little argument on appeal as to why the funds in his account were his separate property. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "clear and concise argument for the contentions made"). And other than his brief trial testimony that the funds were his, Goode offered no evidence tracing and identifying the funds to show they were his separate property. *See Robles*, 965 S.W.2d at 614 (stating that mere testimony that funds are separate property without

16

tracing does not rebut presumption of community property). The trial court, as factfinder, could choose to disbelieve Goode's unsupported testimony about the nature of the funds in the account. *See Vallalpando*, 480 S.W.3d at 806 (stating that trial court alone, as factfinder, determines witness credibility, weight to give witness testimony, and whether to accept or reject all or any part of that testimony). And even if the trial court believed Goode's testimony, mere testimony that the funds are his separate property without tracing and identifying them is insufficient to rebut the community property presumption. *See Robles*, 965 S.W.2d at 614.

Goode also testified that he deposited income from his rental properties into the account. Rental income is community property even if the income is produced from a spouse's separate property. *See id.*; *see also Penick v. Penick*, 783 S.W.2d 194, 195–96 (Tex. 1988) ("Under our law, the income during marriage from the estate of either the husband or the wife is community.") (quoting *Colden v. Alexander*, 171 S.W.2d 328, 334 (Tex. 1943)); *Alsenz v. Alsenz*, 101 S.W.3d 648, 653 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("In general, income produced from separate property is considered community property."). Goode testified that he earned $10,000 per month in rental income during the marriage until the houses flooded and became uninhabitable and his rental income was reduced to $2,200 per month. Goode did not say when the houses flooded or when his rental income was reduced. During the marriage, Goode deposited a significant amount of

17

rental income—community property—into the account. Goode admitted at trial that he commingled funds in the account, which apparently precluded their segregation and identification as Goode did not introduce any evidence tracing and identifying the funds in the account. *See In re Marriage of Stegall*, 519 S.W.3d at 674.

Thus, we conclude that Goode did not satisfy his burden to prove by clear and convincing evidence what funds, if any, in his checking account were his separate property. *See* TEX. FAM. CODE § 3.003(b); *Brown*, 526 S.W.3d at 509. Because Goode did not present sufficient evidence to meet his burden, the trial court did not err in characterizing the cash in the account as community property, and it did not divest Goode of his separate property when it divided those funds. *See Brown*, 526 S.W.3d at 509. Rather, the trial court's classification of the funds as community property constituted "a necessary classification of property as set by the community presumption." *See Pearson*, 332 S.W.3d at 364; TEX. FAM. CODE § 7.001 (requiring court to divide community estate in divorce decree).

### 2. Division of Checking Account Funds

Goode next argues that, if the cash in the account was community property as we have concluded it was, the trial court lacked sufficient evidence in the parties' sparse testimony to support the monetary award to Garcia.

Goode testified that the balance in the account was "over $60,000" at the time of trial. As factfinder, the trial court was the sole judge of Goode's testimony and

18

could choose to disbelieve it, particularly considering it was not supported by any documentary evidence. *See Vallalpando*, 480 S.W.3d at 806 (stating that trial court alone, as factfinder, determines witness credibility, weight to give witness testimony, and whether to accept or reject all or any part of that testimony). Moreover, Goode is an interested party, and his uncorroborated testimony does not conclusively establish any fact even when uncontradicted. *See Robles*, 965 S.W.2d at 616. "Each spouse has the burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division." *Fuentes v. Zaragoza*, 555 S.W.3d 141, 162 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Each spouse has the burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division."). When a spouse does not provide evidence of values of property subject to division, the spouse "may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.).

Goode also did not request findings of fact from the trial court, and thus he cannot demonstrate that any error in dividing the property materially affected the division of the marital estate. *See In re Marriage of Harrison*, 557 S.W.3d at 141–42; *Brown*, 526 S.W.3d at 509–10. Without findings, we cannot know the basis for the trial court's division of the community estate, the values assigned to the

community assets, or the percentage of the marital estate awarded to each party. *See* TEX. FAM. CODE § 6.711(a); *In re Marriage of Harrison*, 557 S.W.3d at 141–42; *see also Robles*, 965 S.W.2d at 621 (stating appellate court lacks authority to render judgment dividing marital estate but may determine only whether trial court abused its discretion in disposing of marital estate). Similarly, to the extent Goode argues that the trial court disproportionately divided the marital estate, the absence of findings precludes Goode from establishing whether the trial court intended the division of property to be equal or disproportionate, what factors the trial court found to warrant an unequal distribution if one was intended, or whether the division was actually disproportionate. *See Brown*, 526 S.W.3d at 507–08; *In re Marriage of Harrison*, 557 S.W.3d at 141.

We note that the trial court awarded both parties property other than the property at issue in this appeal. Except for the monetary award, the final divorce decree does not assign values to any property awarded to the parties or to the community estate as a whole. *See In re Marriage of Harrison*, 557 S.W.3d at 141; *Brown*, 526 S.W.3d at 507. Nor are there any findings regarding whether the trial court disproportionately awarded assets to Garcia as she requested in her counterpetition. *See Murff*, 615 S.W.2d at 698–99 (recognizing that "community property need not be equally divided"); *Fuentes*, 555 S.W.3d at 162 ("The division of a community estate need not be equal; there must only be a reasonable basis for

20

the division. A trial court may decree an unequal division of an estate as long as a reasonable basis for doing so exists.").

Nevertheless, the evidence at trial included the most recent balance of funds in the bank account, exactly half of which the trial court awarded to Garcia. The list of account balances is some evidence of a substantive and probative character supporting the trial court's monetary award to Garcia. *See Lynch*, 540 S.W.3d at 127 (stating that, in in determining whether trial court abused its discretion because evidence was legally or factually insufficient to support decision, we consider whether trial court (1) had sufficient evidence upon which to exercise discretion and (2) erred in application of discretion). Accordingly, we hold that the trial court did not abuse its discretion in awarding a portion of the funds in the checking account to Garcia. We overrule Goode's first issue.

**D.    Real Property Award**

In his second issue, Goode argues that the trial court abused its discretion in awarding Garcia real property because this award divested Goode of his separate property and was not a just and right division of the marital estate. Goode contends that the "record is clear the real property in question was purchased to a great extent if not exclusively from [Goode's] separate funds" and that the record is "woefully inadequate for the [trial court] to evaluate and assess the nature and extent of the community estate." Goode further contends that Garcia came into the marriage with

"very little and yet is leaving with more than the remaining separate estate of [Goode] and 100 percent of the community estate," which Goode argues is not "just and right by any stretch."

Garcia responds that the trial court awarded her two of the three real properties purchased during the marriage and, according to her property inventory and appraisement, those two properties were less valuable than the third property purchased during the marriage that the trial court did not award to her. Garcia argues that Goode did not file a competing inventory that contained valuations of the properties or a proposed property division, and he did not produce any evidence tracing the funds used to purchase the properties.

At trial, Goode testified that he owned twelve parcels of real property, three of which he purchased during the marriage. The trial court admitted into evidence deeds for the three properties acquired during the marriage. Goode estimated the value of the Redondo Drive house at $70,000, but he did not place a value on the Barbil Lane house. Goode estimated the value of the Lear Street house—which was bought during the parties' marriage but not awarded to Garcia—at approximately $60,000. Goode testified that all three properties were uninhabitable.

Garcia asked the court to award her two of the three houses purchased during the marriage. She wanted to live in the house on Redondo Drive with her children and fix up and sell the second house to support her and her children. She introduced

into evidence an inventory and appraisement of property and a proposed property division stating the value of the three properties acquired during the parties' marriage. She valued the Redondo Drive house at $79,214, the Barbil Lane house at $20,925, and the Lear Street house at $111,563.

### 1. Classification of Disputed Real Property

We disagree with Goode that the "record is clear" that the three parcels of real property at issue in this appeal were "purchased to a great extent if not exclusively from [Goode's] separate funds." The only evidence concerning the purchase of the three properties during the parties' marriage was Goode's testimony that he bought the properties with his funds and that he bought the house on Redondo Drive with "funds [he] already had" and "had accumulated over the years" from his "retirement account."

To the extent Goode argues that he purchased any of the three disputed real properties with funds from his checking account, we have already concluded that Goode failed to rebut the community presumption and therefore those funds were community property. Goode offered no evidence at trial tracing and identifying any of the funds used to purchase the three real properties, whether those funds came from the bank account or elsewhere. *See Robles*, 965 S.W.2d at 614; *see also Bush v. Bush*, 336 S.W.3d 722, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (stating well-established rule that, in order to show property purchased during

23

marriage is separate property, it is not enough to simply state that funds used to purchase property were separate funds; "instead there *typically* must be some sort of documentary tracing to show that the funds used were separate property"). Thus, Goode did not meet his burden to prove by clear and convincing evidence that the three parcels of real property purchased during the parties' marriage were his separate property. *See* TEX. FAM. CODE § 3.003(b); *Brown*, 526 S.W.3d at 509; *Robles*, 965 S.W.2d at 614. As a result, the trial court's classification of the real property as community property did not divest Goode of his separate property but rather constituted "a necessary classification of property as set by the community presumption." *See Pearson*, 332 S.W.3d at 364; TEX. FAM. CODE § 7.001 (requiring court to divide community estate in divorce decree).

### 2.    Division of Disputed Real Property

As discussed above, Goode did not request findings of fact from the trial court and therefore we cannot know the basis for the trial court's division of the community estate, including the real property at issue; the value the trial court assigned to the various community assets; the percentage of the marital estate awarded to each party; or whether the trial court intended an equal or disproportionate division of the marital estate. *See* TEX. FAM. CODE §7.001; *In re Marriage of Harrison*, 557 S.W.3d at 141; *Brown*, 526 S.W.3d at 507–08. Because there are no findings from the trial court, Goode cannot establish that Garcia was

24

awarded "more than the remaining estate of [Goode] and 100 percent of the community estate" as he argues on appeal. The final decree also awarded other property to each party, including cash, vehicles, furniture, clothing, and jewelry, and Garcia was awarded custody of the children. Moreover, the trial court did not award Garcia the third property purchased during the parties' marriage.[5] *See Brown*, 526 S.W.3d at 507 (stating that when trial court does not file findings of fact, we presume court made all findings necessary to support judgment).

Goode also acknowledged that Garcia did not work and had little education. He further acknowledged that, after the parties separated, Garcia and the two young twins lived in a women's shelter. He did not offer to fix up one of his numerous rental properties for Garcia and the children to live in. *See Lynch*, 540 S.W.3d at 128 (listing several relevant, non-exclusive factors that trial court may consider in dividing marital estate under section 7.001, including disparity in the parties' ages, disparity of incomes or earning capacities, relative financial condition and obligations, education, size of any separate estates, and probable need for future support) (citing *Murff*, 615 S.W.2d at 699).

---

[5] As part of his argument that Garcia "is leaving with more than the remaining separate estate of [Goode] and 100 percent of the community estate," Goode also argues that the trial court did not "set the property aside" that he bought prior to the marriage. However, the final divorce decree did not award Garcia any real property that Goode acquired prior to the marriage.

Furthermore, both parties agreed that the three parcels of real property were purchased during the marriage. Goode testified that the Redondo Drive property, which was awarded to Garcia, was valued at approximately the same amount as the Lear Street property, which was not awarded to Garcia. Goode did not place a value on the Barbil Lane property, which was awarded to Garcia. Garcia's inventory and appraisement listed the combined values of the Redondo Drive and Barbil Lane properties as approximately the same amount as the Lear Street house. At least some evidence of a substantive and probative character supports the trial court's real property award to Garcia. *See Cohen*, 569 S.W.3d at 774; *Lynch*, 540 S.W.3d at 127. Therefore, we hold that the trial court did not abuse its discretion in dividing the marital estate and awarding two parcels of real property to Garcia. We overrule Goode's second issue.

## Conclusion

We affirm the judgment of the trial court.

April L. Farris
Justice

Panel consists of Justices Kelly, Guerra, and Farris.

26